Exhibit 1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:                                                          Chapter 11(Involuntary)

GUERRINI FAMILY LIMITED PARTNERSHIP            Case No. 8:06-bk-05383-MGW

      Debtor.

_____/

## DECLARATION OF DAVID E. HAMMER IN SUPPORT OF MOTION TO HOLD MARY KATHERINE HAIRE AND GEOFFREY TODD HODGES IN CONTEMPT

1. I am over the age of twenty-one and I have personal knowledge of the facts contained herein. I am a member of the Florida Bar, bar number 23173, as well as a member of the Bar of the Middle District of Florida.

2. On October 5, 2006, at about 3:39 p.m., I received a facsimile transmission. A true and correct copy of the contents of that transmission is attached hereto as Exhibit A.

3. The transmission included a letter from Mary Katherine Haire ("Haire") addressed to my client, Lois Steffen.

4. On October 3, 2006, I accessed the online Records Search provided on the Internet site of the Hillsborough County Clerk of Courts, and retrieved two mortgages against the real property located at 16229 Villarreal de Avila, Tampa, FL 33613 ("Real Property"), true and correct copies of which are attached hereto as Exhibits B and C respectively.

5. Exhibit B is a fifth mortgage against the Real Property, in favor of Mary Katherine Haire.

6. Exhibit C is a sixth mortgage against the Real Property, in favor of Guerrini Corporation.

7. Mary Katherine Haire is the sole officer and director of Guerrini Corporation.

I, David Eric Hammer, declare under penalty of perjury that the foregoing is true and correct.  Executed on this 3rd day of November, 2006, in Tampa, Florida.

David E. Hammer

2

Exhibit A

9545 N Florida Ave
Tampa, FL 33612
813-933-6571
813-935-8234
executiveoffices@erniehaireford.com



# Fax

| | | | |
|---|---|---|---|
| **To:** | David Hammer, Esq. | **From:** | Guerrini Family Limited Partnership |
| **Fax:** | 800-967-7340 | **Pages:** | 3 |
| **Phone:** | 813-274-4999 | **Date:** | October 5, 2006 |
| **Re:** | 16229 Villarreal | **cc:** | |

☐ **Urgent**   ☐ **For Review**   ☐ **Please Comment**   ☐ **Please Reply**   ☐ **Please Recycle**

# Guerrini Family Limited Partnership
## 9545 N Florida Ave
## Tampa, FL 33612
## 813-933-6571 Ext. 1003
## FAX: 813-935-8234

October 5, 2006

Lois Steffen, Director
Keyapaha Company
13236 County Road 103
Crosslake, MN 56442

Re: 16229 Villarreal

Dear Ms. Steffen:

We received a summons and involuntary bankruptcy petition filed by Keyapaha Company against Guerrini Family Limited Partnership. A copy is enclosed. We are at a loss to understand why Keyapaha Company claims to be creditor of Guerrini, and why an involuntary bankruptcy petition was filed, particularly in light of our planned meeting Sunday to try and settle the litigation matters. We believe the involuntary petition was filed in bad faith, and we intend to seek its dismissal.

To our knowledge, Guerrini Family Limited Partnership has never agreed to pay Keyapaha anything. While the partnership is required to distribute 99% of any remaining profits to Keyapaha, it certainly has never borrowed money from Keyapaha. In fact, we have sought your financial support several times in the past, and our requests were never answered.

Please understand that the costs of getting the involuntary petition dismissed are only going to further erode the partnership's value, leaving less money for Keyapaha at the partnership's eventual liquidation. We intend to seek all available sanctions and remedies against all persons responsible for this action.

Sincerely,

Mary K. Haire, Vice President
Guerrini Corporation
General Partner

Lois Steffen
Page 2
10/5/2006

cc:  Michael R. Carey, Esq.
     David Hammer, Esq.

Exhibit B

Prepared by and Return to:

/ G.T. Hodges, P.A.
905 Shaded WaterWay
Lutz, FL 33549

INSTR # 2006498170
O BK 17070 PG 1653
Pgs 1653 - 1664; (12pgs)
RECORDED 10/17/2006 09:18:46 AM
PAT FRANK CLERK OF COURT
HILLSBOROUGH COUNTY
DOC TAX PD(F.S.201.08) 306.25
INT.TAX PD(F.S.199) 175.00
DEPUTY CLERK V Beery

## FIFTH MORTGAGE

THIS MORTGAGE, made on October 10, 2006, by GUERRINI FAMILY LIMITED PARTNERSHIP, a Florida limited partnership, whose post office address is 9545 North Florida Avenue, Tampa, Florida 33612 (Mortgagor), to MARY K. HAIRE, whose post office address is 2553 SW 210th Avenue, Dunellon, Florida 34431 (Mortgagee).

### RECITALS

Mortgagor is indebted to Mortgagee, having executed and delivered to Mortgagee that certain Promissory Note (the "Note") dated of even date herewith, in the original principal sum of EIGHTY-SEVEN THOUSAND FIVE HUNDRED AND NO/100 DOLLARS ($87,500.00), all of which is secured by this Mortgage, according to the terms and conditions specified in the note attached and incorporated herein as Exhibit "A";

In consideration of the indebtedness and to secure the payment to Mortgagee of the principal with interest and all other sums provided for in the Note and in this Mortgage, including, but not limited to, any future advances, if any, and for performance of the agreements, conditions, covenants, provisions, and stipulations contained herein and therein, and in certain other agreements and instruments made and given by Mortgagor to Mortgagee in connection therewith, Mortgagor has granted, bargained, sold, and conveyed and, by these presents, does grant, bargain, sell, and convey unto Mortgagee that tract or parcel of land in Hillsborough County, Florida, more particularly described as follows:

Lots 19, 20 and 21 in Block 5 of AVILA UNIT NO. 5, according to the plat thereof recorded in Plat Book 59, Page 44, of the Public Records of Hillsborough County, Florida.

TOGETHER with all the tenements, hereditaments, easements, appurtenances, passages, waters, water courses, riparian rights, other rights and privileges thereof or in any way now or hereafter appertaining, including any other claim at law or in equity as well as any after acquired title, franchise, or license and the reversions and remainders thereof; and

TOGETHER with all buildings and improvements of every kind and description now or hereafter erected or placed thereon and all materials intended for construction, reconstruction, alteration, and repairs of such improvements now or hereafter erected thereon, all of which materials shall be deemed to be included within the mortgaged premises immediately upon the delivery thereof to such mortgaged premises, and all fixtures and articles of personal property now or hereafter owned by Mortgagor and attached to or contained in and used in connection with said premises, including but not limited to all appliances, all plumbing, heating, lighting, ventilating, refrigerating, incinerating, air-conditioning, hot water heating, and sprinkler equipment and fixtures and appurtenances thereto; and all renewals or replacements thereof or articles in substitution therefor, whether or not the same are or shall be attached to said land or building or buildings in any manner; it being mutually agreed that all the aforesaid property owned by said Mortgagor and placed by it on said premises shall, so far as permitted by law, be deemed to be affixed to the realty and covered by this Mortgage. Such tract or parcel of land and buildings, improvements, fixtures, machinery, equipment, tenements, personal property, and property interests being hereinafter collectively called the "mortgaged property."

TO HAVE AND TO HOLD the above-granted and described mortgaged property to Mortgagee, its successors and assigns, forever.

And Mortgagor hereby represents, warrants, and covenants with Mortgagee that Mortgagor is indefeasibly seized of the mortgaged property in fee simple; that Mortgagor has full power and lawful right to convey the same in fee simple as aforesaid, that it shall be lawful for Mortgagee at all times peaceably and quietly to enter upon, hold, occupy, and enjoy the mortgaged property and every part thereof; that the mortgaged property is free from all liens and encumbrances, except that certain first mortgage in favor of MERS, as nominee for SouthTrust Mortgage Corporation, recorded in Official Records Book 13822, Page 1399 of the Public Records of Hillsborough County, Florida, that certain second mortgage in favor of Mary K. Haire and recorded in Official Records Book 15024, Page 153 of the Public Records of Hillsborough County, Florida, that certain third mortgage in favor of Mary K. Haire and recorded in Official Records Book 15791, Page 980 of the Public Records of Hillsborough County, Florida, and that certain fourth mortgage recorded by Lender in favor of Mary K. Haire recorded in Official Records Book 16553, Page 231 of the Public Records of Hillsborough County, Florida; that all property, fixtures, and equipment described herein will be fully paid for and free from all liens, encumbrances, title retaining contracts, and security interests when delivered and/or installed upon the mortgaged property; that such property, fixtures, and equipment shall be deemed to be realty and a part of the freehold; that Mortgagor will make such further assurances to prove the fee simple title to all and singular the mortgaged property in Mortgagee and to prove the lien and priority of this mortgage, as may be reasonably required, and that Mortgagor does hereby and will forever fully warrant and defend the lien and priority of this mortgage and the title to the

2

mortgaged property and every part thereof against the lawful claims and demands of all persons whomsoever.

PROVIDED ALWAYS, and these presents are upon the express condition that, if Mortgagor or the successors or assigns of Mortgagor shall pay unto Mortgagee, its successors or assigns, the sums of money secured hereby, and any renewals or extensions thereof in whatever form, and the interest thereon as it shall become due, according to the true intent and meaning thereof, together with all advances hereunder, costs, charges, and expenses, including a reasonable attorney's fee, which Mortgagee may incur in collecting the same by foreclosure or otherwise, and shall duly, promptly, and fully perform, discharge, execute, effect, complete, comply with, and abide by each and every one of the stipulations, agreements, conditions, and covenants of the Note, this Mortgage, and other documents or instruments given by Mortgagor to Mortgagee in connection herewith, then this mortgage and the estate hereby created shall cease and be NULL AND VOID and this instrument shall be released by Mortgagee, at the cost and expense of Mortgagor.

MORTGAGOR COVENANTS AND AGREES to and with Mortgagee that, until the indebtedness secured hereby is fully repaid:

1. <u>Payment and Performance</u>: Mortgagor shall pay Mortgagee, in accordance with the terms of the Note and this Mortgage, the principal, interest, and other sums therein set forth; and Mortgagor shall perform and comply with all the agreements, conditions, covenants, provisions, and stipulations of the Note and this Mortgage, the terms of which are incorporated herein by reference. Any prepayment under the promissory note secured hereby, in whatever amount, shall be applied to principal only, and it is expressly stipulated and agreed that any such prepayment shall not suspend or affect Mortgagor's obligation to make any periodic installment payments provided for in the said Note.

2. <u>Interest Rate</u>: Notwithstanding any provision contained in this Mortgage or in the Note secured hereby, the total liability for payment of interest, or in the nature of interest, shall not exceed the limits now imposed by the applicable usury law, including the applicable choice of law rules. In the event of the acceleration of the Note hereby secured, the total charges for interest and in the nature of interest shall not exceed the maximum amount allowed by law; any excess portion of such charges that may have been prepaid shall be refunded to the maker thereof. Such refund may be made by application of the amount involved against the sums then due hereunder, but such crediting shall not cure or waive the default occasioning acceleration. Nothing herein contained nor in any transaction related hereto shall be construed or shall so operate either presently or prospectively to require Mortgagor to make any payment or do any act contrary to law, but, if any clause and provision herein contained shall otherwise so operate to invalidate this Mortgage, in whole or in part, then such clauses and provisions only shall be held for naught as though not herein contained and the remainder of this Mortgage shall remain operative and in full force and effect.

3. <u>Maintenance of Mortgaged Property</u>: Mortgagor shall abstain from and shall not permit the commission of waste, impairment or deterioration in or about the mortgaged property;

3

Mortgagor shall not remove, demolish, or alter the structural character of any building erected at any time on the mortgaged property, without the prior written consent of Mortgagee; Mortgagor shall not permit the mortgaged property to become vacant, deserted, or unguarded; and Mortgagor shall maintain the mortgaged property in good condition and repair, reasonable wear and tear excepted.

Insurance: Mortgagor shall keep the mortgaged property continuously insured against hazard and against flood if within a flood prone area, in a sum not less than the full insurable value by a company or companies acceptable to Mortgagee. All policies shall be in form satisfactory to Mortgagee; shall be maintained in full force and effect; shall be assigned and delivered to Mortgagee at or prior to closing, with premiums prepaid, as collateral security for payment of the indebtedness secured hereby; shall be endorsed with a standard mortgagee clause in favor of Mortgagee; and, shall provide for at least 30 days' notice of cancellation to Mortgagee. If the insurance, or any part thereof, shall expire, be withdrawn, or become void or unsafe by Mortgagor's breach of any condition thereof, or become void or unsafe by reason of the failure or impairment of the capital of the insurer, or, if for any reason whatever the insurance shall be unsatisfactory to Mortgagee, Mortgagor shall place new insurance on the mortgaged property, satisfactory to Mortgagee. All renewal policies, with premiums paid, shall be delivered to Mortgagee at least 30 days before expiration of the old policies. In the event of loss, Mortgagor will give immediate notice thereof to Mortgagee, and Mortgagee may make proof of loss if not made promptly by Mortgagor. Each insurance company is hereby authorized and directed to make payment under such insurance, including return of unearned premiums, directly to Mortgagee instead of to Mortgagor and Mortgagee jointly, and Mortgagor appoints Mortgagee, irrevocably, as Mortgagor's attorney-in-fact to endorse any draft therefor. At its election, Mortgagee shall have the right to retain and apply the proceeds of any such insurance to reduction of the indebtedness secured hereby, or to restoration or repair of the property damaged. If Mortgagee becomes the owner of the mortgaged property or any part thereof by foreclosure or otherwise, such policies, including all right, title, and interest of the Mortgagor thereunder, shall become the absolute property of Mortgagee.

5.      Taxes and Other Charges: Mortgagor shall pay, when due and payable and before interest or penalties are due thereon, all taxes, assessments, levies, liabilities, obligations, encumbrances, water and sewer rents, and all other charges or claims of every nature and kind that may be imposed, suffered, placed, assessed, levied, or filed at any time against the mortgaged property or any part thereof. Insofar as any such tax, assessment, levy, liability, obligation, or encumbrance is of record, the same shall be promptly satisfied and discharged of record, and the original official document (such as, for instance, the tax receipt or the satisfaction paper officially endorsed or certified) shall be delivered to Mortgagee not later than such dates. Mortgagor shall provide proof of timely payment of such taxes to the Mortgagee prior to delinquency.

6.      Prior Mortgages: The Mortgagor covenants and agrees to make all payments and perform all conditions and covenants called for in any prior mortgages now encumbering the property, and in the event of default in any such payment or payments, conditions or stipulations, the Mortgagee, without waiving the option to foreclose, herein reserves the right to make such

4

Book17070/Page1656

payments, or perform such conditions or stipulations, so as to maintain the prior mortgages and prevent a foreclosure thereof. Any and all such sums paid or expenses incurred on behalf of the Mortgagor, together with interest thereon from the date of payment at the rate of interest prescribed in the note underlying this mortgage, shall be added to the mortgage indebtedness and be secured by this mortgage,

In the event that the Mortgagor defaults in any payment or condition stipulated in any prior mortgage, or in the event of any default in a prior mortgage so as to cause such prior mortgage to be accelerated and become due and payable during the continuance of this mortgage, then Mortgagee may declare the Note and this Mortgage in default and the entire sums less any unearned interest secured by this Mortgage shall become due and payable, at the option of the Mortgagee.

7.    Security Agreement: This mortgage constitutes a security agreement under the Uniform Commercial Code and creates a security interest in the personal property included in the mortgaged property. Mortgagor shall execute, deliver, file, and refile any financing statements or other security agreements Mortgagee may require from time to time to confirm the lien of this mortgage with respect to such property. Without limiting the foregoing, Mortgagor hereby irrevocably appoints Mortgagee attorney-in-fact for Mortgagor to execute, deliver, and file such instruments for and on behalf of Mortgagor.

8.    Limitation on Additional Financing: Mortgagor shall not undertake additional financing secured by any lien or security interest on the mortgaged property without first obtaining Mortgagee's written consent. Any violation of the foregoing limitation shall, at the option of Mortgagee, be deemed an event of default hereunder.

9.    Compliance with Law and Regulations: Mortgagor shall comply with all laws, ordinances, regulations, and orders of all federal, state, municipal, and other governmental authorities relating to the mortgaged property.

10.    Inspection: Mortgagee and any persons authorized by Mortgagee shall have the right at any time, upon reasonable notice to Mortgagor, to enter the mortgaged property at a reasonable hour to inspect and photograph its condition and state of repair.

11.    Declaration of No Setoff. Within one week after requested to do so by Mortgagee, Mortgagor shall certify to Mortgagee or to any proposed assignee of this mortgage, in a writing duly acknowledged, the amount of principal, interest, and other charges then owing on the obligation secured by this mortgage and whether there are any setoffs or defenses against it, and, if such setoffs or defenses are asserted, a detailed explanation thereof.

12.    Required Notices: Mortgagor shall notify Mortgagee promptly of the occurrence of any of the following:

(a)    a fire or other casualty causing damage to the mortgaged property;

5

Book17070/Page1657

(b)    receipt of notice of condemnation of the mortgaged property;

(c)    receipt of notice from any governmental authority relating to the structure, use, or occupancy of the mortgaged property;

(d)    substantial change in the occupancy of the mortgaged property; or

(e)    commencement of any litigation affecting the mortgaged property.

Condemnation:

(a)    In the event of any condemnation or taking of any part of the mortgaged property by eminent domain, alteration of the grade of any street, or other injury to or decrease in the value of the mortgaged property by any public or quasi-public authority or corporation, all proceeds awarded for the taking of or damage to the mortgaged property shall be paid to Mortgagee, its successors or assigns, up to the amount then unpaid on this Mortgage. Mortgagor shall continue to pay the installments of principal, interest, and other charges until payment of the proceeds shall have been received by Mortgagee of the full amount secured hereunder. All the proceeds shall be applied in the order and in the amounts that Mortgagee, in Mortgagee's sole discretion may elect, to the payment of principal (whether or not then due and payable); interest or any sums secured by this Mortgage; or toward payment to Mortgagor, on such reasonable terms as Mortgagee may specify to be used for the sole purpose of altering or restoring any part of the mortgaged property that may have been altered, damaged, or destroyed as a result of the taking, alteration of grade, or other injury to the mortgaged property.

(b)    If, prior to the receipt of the proceeds by Mortgagee, the mortgaged property is sold on foreclosure of this mortgage, Mortgagee shall have the right to receive the proceeds to the extent of:

(i)    any deficiency found to be due to Mortgagee in connection with the foreclosure sale, with legal interest thereon, and

(ii)    reasonable counsel fees, costs, and disbursements incurred by Mortgagee in connection with collection of the proceeds and the proceedings to establish the deficiency.

(c)    If the amount of the initial award of damages for the condemnation is insufficient to pay in full the indebtedness secured hereby with interest and other appropriate charges, Mortgagee shall have the right to prosecute to final determination or settlement an appeal or other appropriate proceedings in the name of Mortgagee or Mortgagor, for which Mortgagee is hereby appointed irrevocably as attorney-in-fact for Mortgagor, which appointment being for security, is irrevocable. In that event, the expenses of the proceedings, including reasonable counsel fees, shall be paid first out of the proceeds, and only the excess, if any, paid to the Mortgagee shall be credited against the amounts due under this Mortgage.

6

Book17070/Page1658

(d)     Nothing herein shall limit the rights otherwise available to Mortgagee, at law or in equity, including the right to intervene as a party to any condemnation proceeding.

14.     Restriction on Transfer: In the event the mortgaged property or any interest therein, is sold, transferred or conveyed by deed, agreement for deed, lease with option to purchase, or by any other means of conveyance, without the prior written consent of the Mortgagee, then the entire principal due under this mortgage at the time of such transfer shall become immediately due and payable without notice to Mortgagor, it being specifically understood that this mortgage evidences an extension of credit by Mortgagee to Mortgagor personally, for the benefit of Mortgagor and no other party.

15.     Mortgagee's Right to Remedy Defaults: If Mortgagor fails to pay real estate or other taxes, assessments, water and sewer rents, charges and claims, insurance premiums, or sums due under any prior lien or insurance premiums, fails to make necessary repairs, or permits waste, Mortgagee at its election and without notice to Mortgagor, shall have the right to make any payment or expenditure and to take any action that Mortgagor should have made or taken or which Mortgagee deems advisable to protect the security of this Mortgage or the mortgaged property, without prejudice to any of Mortgagee's rights or remedies available hereunder or otherwise, at law or in equity. All such sums and costs advanced by Mortgagee pursuant to this mortgage shall be due immediately from Mortgagor to Mortgagee, shall be secured hereby, and shall bear interest at the highest rate allowed by law. Mortgagee shall be subrogated to any rights, equities, and liens so discharged.

16.     Events of Default: The following shall constitute events of default hereunder:

(a)     Failure of Mortgagor to pay any installment of principal or interest, or any other sum, within thirty (30) days after the date it is due under the Note or this Mortgage.

(b)     Mortgagor's nonperformance of or noncompliance with any other agreements, conditions, covenants, provisions, or stipulations contained in the Note or in this Mortgage, or in any other document securing such Note.

(c)     Any assignment for the benefit of creditors made by Mortgagor, any shareholder or partner of Mortgagor, or any person executing any guaranty given to Mortgagee in connection with the Note.

(d)     Appointment of a receiver, liquidator or trustee of Mortgagor (which term for the purposes of this subparagraph (d) shall be defined to include any shareholder or any partner of Mortgagor) or of any of the property of Mortgagor; insolvency of Mortgagor or the adjudication of Mortgagor as bankrupt; the filing by Mortgagor of any petition for the bankruptcy, reorganization, or arrangement of Mortgagor pursuant to the Federal Bankruptcy Act or any similar statute; the institution by Mortgagor of any proceeding for the dissolution or liquidation of Mortgagor; or the filing against Mortgagor of any such petition or institution against Mortgagor of such proceedings, unless the same be discharged within 30 days after the filing or institution.

7

17.     Remedies:

(a)     Upon the happening of any event of default, this conveyance shall become absolute, and the entire unpaid balance of the principal, the accrued interest, and all other sums secured by this Mortgage shall become immediately due and payable, at the option of Mortgagee, without notice or demand.

(b)     When the entire indebtedness shall become due and payable because of maturity, the occurrence of any event of default, or otherwise, then forthwith:

(i)     Foreclosure: Mortgagee may institute an action to foreclose this Mortgage against the mortgaged property or take such other action at law or in equity for the enforcement of this Mortgage and realization on the mortgage security or any other security herein or elsewhere provided for, as the law may allow, and may proceed therein to final judgment and execution for the entire unpaid balance of the principal debt, with interest at the highest rate allowed by law, together with all other sums due by Mortgagor in accordance with the provisions of the Note and this Mortgage, including all sums that may have been advanced by Mortgagee to Mortgagor after the date of this Mortgage, and all sums that may have been advanced by Mortgagee for taxes, water or sewer rents, charges or claims, payments on prior liens, insurance or repairs to the mortgaged property, all costs of suit, with interest, together with attorney's fees; or

(ii)     Assignment of Rents and Profits: Mortgagee may collect all rents and profits, it being the intent of the parties that the lien hereof shall extend to and include the use, rents, and profits of said premises. Notwithstanding the foregoing, the Mortgagor shall have the right to remain in possession of said premises and enjoy the use of, and to receive rents and profits thereof, without accounting to the Mortgagee therefor, so long as there shall be no default hereunder, provided that in the event of any such default hereunder, the Mortgagee shall be entitled to the possession and use of said mortgaged premises, and to receive and apply the net rents and profits thereof, upon and toward the payment of the indebtedness hereby secured. Mortgagee shall, after deducting all costs of collection and administration expenses, apply the net rentals to any or all of the following in such order and amounts as Mortgagee, in Mortgagee's sole discretion, may elect: the payment of taxes, water and sewer rents, charges and claims, insurance premiums, and all other carrying charges, and to the maintenance, repair, or restoration of the mortgaged property, and on account of and in reduction of the principal or interest, or both, hereby secured. In and for that purpose, Mortgagor hereby assigns to Mortgagee all rentals due and to become due under any lease or leases or rights to use and occupation of the mortgaged property hereafter created, as well as all rights and remedies provided in such lease or leases or at law or in equity for the collection of the rentals. Mortgagee shall be entitled to the appointment of a receiver of all the rents, issues, and profits, as a matter of strict right, regardless of the value of the mortgaged property and the solvency or insolvency of Mortgagor and other persons liable to pay such indebtedness. Mortgagor hereby specifically waives the right to object to the appointment of a receiver as aforesaid and hereby expressly consents that such appointment shall be made as an admitted equity and that the same may be done without notice to Mortgagor.

8

(c)     Mortgagee shall have the right, from time to time, to bring an appropriate action to recover any sums required to be paid by Mortgagor under the terms of this mortgage, as they become due, without regard to whether the principal indebtedness or any other sums secured by the note and this Mortgage shall be due, and without prejudice to the right of Mortgagee thereafter to bring an action to foreclose this mortgage, or any other action, for any default by Mortgagor existing at the time the earlier action was commenced.

(d)     Any real estate sold pursuant to any action to foreclose this Mortgage or pursuant to any other judicial proceeding under this Mortgage or the Note, may be sold in one parcel, as an entirety, or in such parcels or condominium units, and in such manner or order as Mortgagee, in its sole discretion, may elect.

18.     Rights and Remedies Cumulative:

(a)     The rights and remedies of Mortgagee as provided in the Note and in this Mortgage shall be cumulative and concurrent; may be pursued separately or together against Mortgagor, the mortgaged property, or both, at the sole discretion of Mortgagee; and they may be exercised as often as occasion therefor shall arise.  The failure to exercise any such right or remedy shall in no event be construed as a waiver or release thereof.

(b)     Any failure by Mortgagee to insist upon strict performance by Mortgagor of any of the terms and provisions of this mortgage or the note shall not be deemed to be a waiver of any of the terms or provisions thereof, and Mortgagee shall have the right thereafter to insist upon strict performance of any and all of them.

(c)     Neither Mortgagor nor any other person now or hereafter obligated for payment of all or any part of the sums now or hereafter secured by this Mortgage shall be relieved of such obligation by reason of the failure of Mortgagee to comply with any request of Mortgagor or of any other person so obligated to take action to foreclose on this Mortgage or otherwise enforce any provisions of the Mortgage or the Note; by reason of the release, regardless of consideration, of all or any part of the security held for the indebtedness secured by this Mortgage; or by reason of any agreement or stipulation between any subsequent owner of the mortgaged property and Mortgagee extending the time of payment or modifying the terms of the Mortgage or Note without first having obtained the consent of Mortgagor or such other person. In the latter event, Mortgagor and all such other persons shall continue to be liable to make payments according to the terms of any such extension or modification agreement, unless expressly released and discharged in writing by Mortgagee.

(d)     Mortgagee may release, regardless of consideration, any part of the security held for the indebtedness secured by this Mortgage without, as to the remainder of the security, in any way impairing or affecting the lien of this Mortgage or its priority over any subordinate lien.

(e)     For payment of the indebtedness secured hereby, Mortgagee may resort to any other security therefor held by Mortgagee in such order and manner as Mortgagee may elect.

9

19. Counsel Fees: If Mortgagee becomes a party to any suit or proceeding affecting the mortgaged property or title thereto, the lien created by this mortgage or Mortgagee's interest therein, or, if Mortgagee engages counsel to collect any of the indebtedness or to enforce performance of the agreements, conditions, covenants, provisions, or stipulations of this Mortgage or the Note, Mortgagee's costs, expenses, and reasonable counsel fees, whether or not suit is instituted, shall be paid to Mortgagee by Mortgagor on demand with interest at the then effective rate set forth in the Note, and, until paid, these amounts of money shall be deemed to be part of the indebtedness evidenced by the Note and secured by this Mortgage.

20. Future Advances: Pursuant to F.S. §697.04, this Mortgage shall secure not only the existing indebtedness evidenced by the Note but also such future advances as may be made by Mortgagee to Mortgagor within 20 years from the date hereof to the same extent as if such future advances were made on the date of the execution of this Mortgage. The total amount of indebtedness that shall be so secured by this mortgage may decrease or increase from time to time, provided that the total unpaid balance so secured at any one time shall not exceed a principal amount of $89,500.00, PLUS interest thereon and plus any disbursements made for the payment of taxes, levies, or insurance on the property covered by the lien of this Mortgage, together with interest on such disbursements.

21. Amendment: This Mortgage cannot be changed or amended except by agreement in writing signed by the party against whom enforcement of the change is sought.

22. Captions: The captions preceding the text of the paragraphs or subparagraphs of this Mortgage are inserted only for convenience of reference and shall not constitute a part of this Mortgage, and they shall not in any way affect its meaning, construction, or effect.

IN WITNESS WHEREOF, the Mortgagor has caused this Mortgage to be duly executed as of the day and year first above written.

Signed, sealed, and delivered
in the presence of:

GUERRINI FAMILY LIMITED PARTNERSHIP, a Florida limited partnership

By:   GUERRINI CORPORATION, a Florida corporation, its General Partner

Name: LEON H. YOHE

By: _____
Mary K. Haire / Vice President

Name: Marisol Valencia

10

STATE OF FLORIDA
COUNTY OF HILLSBOROUGH

SWORN TO AND SUBSCRIBED before me this 10 day of October, 2006, by Mary K. Haire, as Vice President of Guerrini Corporation, a Florida corporation that is General Partner of Guerrini Family Limited Partnership, who is personally known to me.

Notary Public, State of Florida

DARA MARTIN
Comm# DD0429797
Expires 5/16/2009
Bonded thru (800)432-4254
Florida Notary Assn., Inc.

(SEAL)

11

Book17070/Page1663

EXHIBIT "A"

PROMISSORY NOTE

FOR VALUE RECEIVED, the Guerrini Family Limited Partnership, a Florida limited partnership ("Borrower"), hereby promises to pay to Mary K. Haire ("Lender"), the sum of $87,300.00, or so much thereof as may be advanced by Lender hereunder, together with interest thereon at the rate of 17.9% per annum on the unpaid balance from the date of each advance to the date of payment. All principal and interest shall be due on the earlier of (1) the sale of 16229 Villarreal de Avila, Tampa; or (2) December 31, 2006. Payments not made within ten (10) days of due date shall be subject to a late charge of 5% of said payment. All payments shall be first applied to interest, and the balance to principal. This Note may be prepaid, at any time, in whole or in part, without penalty.

This Note shall at the option of the holder hereof be immediately due and payable upon failure to make any payment due hereunder or for breach of any condition of any security interest, mortgage, pledge agreement or guaranty granted as collateral security for this Note or breach of any condition of any security agreement or mortgage, if any, having a priority over any security agreement or mortgage on collateral granted, in whole or in part, as collateral security for this Note or upon the filing by any of the undersigned of an assignment for the benefit of creditors, bankruptcy or for relief under any provisions of the Bankruptcy Code; or by suffering an involuntary petition in bankruptcy or receivership not vacated within thirty days. In the event this Note shall be in default, and placed with an attorney for collection, then the undersigned agrees to pay all reasonable attorney's fees and costs of collection. The parties agree that venue for any action under this Note shall be in the state or federal courts in Hillsborough County, Florida.

All payments hereunder shall be made to Mary K. Haire, 2553 SW 210th Avenue, Dunellon, FL 34431, or such other address as may from time to time be designated by any holder hereof. The undersigned waives demand, presentment and protest and all notices thereof and further agrees to remain bound, notwithstanding any extension, modification, waiver, or other indulgence by any holder of this Note, or upon the exchange, substitution, or release of any collateral granted as security for this Note.

Signed and sealed in Tampa, Florida, as of the _____ day of October, 2006.

GUERRINI FAMILY LIMITED PARTNERSHIP

By: GUERRINI CORPORATION, General Partner

By:_____
Mary K. Haire, Vice President

12

Prepared by and Return to:

/ G.T. Hodges, P.A.
905 Shaded Waterway
Lutz, FL 33549

INSTR # 2006498170
O BK 17070 PG 1653
Pgs 1653 - 1664; (12pgs)
RECORDED 10/17/2006 09:18:46 AM
PAT FRANK CLERK OF COURT
HILLSBOROUGH COUNTY
DOC TAX PD(F.S.201.08) 306.25
INT.TAX PD(F.S.199) 175.00
DEPUTY CLERK V Beery

## FIFTH MORTGAGE

THIS MORTGAGE, made on October 10, 2006, by GUERRINI FAMILY LIMITED PARTNERSHIP, a Florida limited partnership, whose post office address is 9545 North Florida Avenue, Tampa, Florida 33612 (Mortgagor), to MARY K. HAIRE, whose post office address is 2553 SW 210th Avenue, Dunellon, Florida 34431 (Mortgagee).

### RECITALS

Mortgagor is indebted to Mortgagee, having executed and delivered to Mortgagee that certain Promissory Note (the "Note") dated of even date herewith, in the original principal sum of EIGHTY-SEVEN THOUSAND FIVE-HUNDRED AND NO/100 DOLLARS ($87,500.00), all of which is secured by this Mortgage, according to the terms and conditions specified in the note attached and incorporated herein as Exhibit "A";

In consideration of the indebtedness and to secure the payment to Mortgagee of the principal with interest and all other sums provided for in the Note and in this Mortgage, including, but not limited to, any future advances, if any, and for performance of the agreements, conditions, covenants, provisions, and stipulations contained herein and therein, and in certain other agreements and instruments made and given by Mortgagor to Mortgagee in connection therewith, Mortgagor has granted, bargained, sold, and conveyed and, by these presents, does grant, bargain, sell, and convey unto Mortgagee that tract or parcel of land in Hillsborough County, Florida, more particularly described as follows:

Lots 19, 20 and 21 in Block 5 of AVILA UNIT NO. 5, according to the plat thereof recorded in Plat Book 59, Page 44, of the Public Records of Hillsborough County, Florida.

Book17070/Page1653

TOGETHER with all the tenements, hereditaments, easements, appurtenances, passages, waters, water courses, riparian rights, other rights and privileges thereof or in any way now or hereafter appertaining, including any other claim at law or in equity as well as any after acquired title, franchise, or license and the reversions and remainders thereof; and

TOGETHER with all buildings and improvements of every kind and description now or hereafter erected or placed thereon and all materials intended for construction, reconstruction, alteration, and repairs of such improvements now or hereafter erected thereon, all of which materials shall be deemed to be included within the mortgaged premises immediately upon the delivery thereof to such mortgaged premises, and all fixtures and articles of personal property now or hereafter owned by Mortgagor and attached to or contained in and used in connection with said premises, including but not limited to all appliances, all plumbing, heating, lighting, ventilating, refrigerating, incinerating, air-conditioning, hot water heating, and sprinkler equipment and fixtures and appurtenances thereto; and all renewals or replacements thereof or articles in substitution therefor, whether or not the same are or shall be attached to said land or building or buildings in any manner; it being mutually agreed that all the aforesaid property owned by said Mortgagor and placed by it on said premises shall, so far as permitted by law, be deemed to be affixed to the realty and covered by this Mortgage. Such tract or parcel of land and buildings, improvements, fixtures, machinery, equipment, tenements, personal property, and property interests being hereinafter collectively called the "mortgaged property."

TO HAVE AND TO HOLD the above-granted and described mortgaged property to Mortgagee, its successors and assigns, forever.

And Mortgagor hereby represents, warrants, and covenants with Mortgagee that Mortgagor is indefeasibly seized of the mortgaged property in fee simple; that Mortgagor has full power and lawful right to convey the same in fee simple as aforesaid, that it shall be lawful for Mortgagee at all times peaceably and quietly to enter upon, hold, occupy, and enjoy the mortgaged property and every part thereof; that the mortgaged property is free from all liens and encumbrances, except that certain first mortgage in favor of MERS, as nominee for SouthTrust Mortgage Corporation, recorded in Official Records Book 13822, Page 1399 of the Public Records of Hillsborough County, Florida, that certain second mortgage in favor of Mary K. Haire and recorded in Official Records Book 15024, Page 153 of the Public Records of Hillsborough County, Florida, that certain third mortgage in favor of Mary K. Haire and recorded in Official Records Book 15791, Page 980 of the Public Records of Hillsborough County, Florida, and that certain fourth mortgage recorded by Lender in favor of Mary K. Haire recorded in Official Records Book 16553, Page 231 of the Public Records of Hillsborough County, Florida; that all property, fixtures, and equipment described herein will be fully paid for and free from all liens, encumbrances, title retaining contracts, and security interests when delivered and/or installed upon the mortgaged property; that such property, fixtures, and equipment shall be deemed to be realty and a part of the freehold; that Mortgagor will make such further assurances to prove the fee simple title to all and singular the mortgaged property in Mortgagee and to prove the lien and priority of this mortgage, as may be reasonably required, and that Mortgagor does hereby and will forever fully warrant and defend the lien and priority of this mortgage and the title to the

2

mortgaged property and every part thereof against the lawful claims and demands of all persons whomsoever.

PROVIDED ALWAYS, and these presents are upon the express condition that, if Mortgagor or the successors or assigns of Mortgagor shall pay unto Mortgagee, its successors or assigns, the sums of money secured hereby, and any renewals or extensions thereof in whatever form, and the interest thereon as it shall become due, according to the true intent and meaning thereof, together with all advances hereunder, costs, charges, and expenses, including a reasonable attorney's fee, which Mortgagee may incur in collecting the same by foreclosure or otherwise, and shall duly, promptly, and fully perform, discharge, execute, effect, complete, comply with, and abide by each and every one of the stipulations, agreements, conditions, and covenants of the Note, this Mortgage, and other documents or instruments given by Mortgagor to Mortgagee in connection herewith, then this mortgage and the estate hereby created shall cease and be NULL AND VOID and this instrument shall be released by Mortgagee, at the cost and expense of Mortgagor.

MORTGAGOR COVENANTS AND AGREES to and with Mortgagee that, until the indebtedness secured hereby is fully repaid:

1. <u>Payment and Performance</u>: Mortgagor shall pay Mortgagee, in accordance with the terms of the Note and this Mortgage, the principal, interest, and other sums therein set forth; and Mortgagor shall perform and comply with all the agreements, conditions, covenants, provisions, and stipulations of the Note and this Mortgage, the terms of which are incorporated herein by reference. Any prepayment under the promissory note secured hereby, in whatever amount, shall be applied to principal only, and it is expressly stipulated and agreed that any such prepayment shall not suspend or affect Mortgagor's obligation to make any periodic installment payments provided for in the said Note.

2. <u>Interest Rate</u>: Notwithstanding any provision contained in this Mortgage or in the Note secured hereby, the total liability for payment of interest, or in the nature of interest, shall not exceed the limits now imposed by the applicable usury law, including the applicable choice of law rules. In the event of the acceleration of the Note hereby secured, the total charges for interest and in the nature of interest shall not exceed the maximum amount allowed by law; any excess portion of such charges that may have been prepaid shall be refunded to the maker thereof. Such refund may be made by application of the amount involved against the sums then due hereunder, but such crediting shall not cure or waive the default occasioning acceleration. Nothing herein contained nor in any transaction related hereto shall be construed or shall so operate either presently or prospectively to require Mortgagor to make any payment or do any act contrary to law, but, if any clause and provision herein contained shall otherwise so operate to invalidate this Mortgage, in whole or in part, then such clauses and provisions only shall be held for naught as though not herein contained and the remainder of this Mortgage shall remain operative and in full force and effect.

3. <u>Maintenance of Mortgaged Property</u>: Mortgagor shall abstain from and shall not permit the commission of waste, impairment or deterioration in or about the mortgaged property;

3

Mortgagor shall not remove, demolish, or alter the structural character of any building erected at any time on the mortgaged property, without the prior written consent of Mortgagee; Mortgagor shall not permit the mortgaged property to become vacant, deserted, or unguarded; and Mortgagor shall maintain the mortgaged property in good condition and repair, reasonable wear and tear excepted.

Insurance: Mortgagor shall keep the mortgaged property continuously insured against hazard and against flood if within a flood prone area, in a sum not less than the full insurable value by a company or companies acceptable to Mortgagee. All policies shall be in form satisfactory to Mortgagee; shall be maintained in full force and effect; shall be assigned and delivered to Mortgagee at or prior to closing, with premiums prepaid, as collateral security for payment of the indebtedness secured hereby; shall be endorsed with a standard mortgagee clause in favor of Mortgagee; and, shall provide for at least 30 days' notice of cancellation to Mortgagee. If the insurance, or any part thereof, shall expire, be withdrawn, or become void or unsafe by Mortgagor's breach of any condition thereof, or become void or unsafe by reason of the failure or impairment of the capital of the insurer, or, if for any reason whatever the insurance shall be unsatisfactory to Mortgagee, Mortgagor shall place new insurance on the mortgaged property, satisfactory to Mortgagee. All renewal policies, with premiums paid, shall be delivered to Mortgagee at least 30 days before expiration of the old policies. In the event of loss, Mortgagor will give immediate notice thereof to Mortgagee, and Mortgagee may make proof of loss if not made promptly by Mortgagor. Each insurance company is hereby authorized and directed to make payment under such insurance, including return of unearned premiums, directly to Mortgagee instead of to Mortgagor and Mortgagee jointly, and Mortgagor appoints Mortgagee, irrevocably, as Mortgagor's attorney-in-fact to endorse any draft therefor. At its election, Mortgagee shall have the right to retain and apply the proceeds of any such insurance to reduction of the indebtedness secured hereby, or to restoration or repair of the property damaged. If Mortgagee becomes the owner of the mortgaged property or any part thereof by foreclosure or otherwise, such policies, including all right, title, and interest of the Mortgagor thereunder, shall become the absolute property of Mortgagee.

5. Taxes and Other Charges: Mortgagor shall pay, when due and payable and before interest or penalties are due thereon, all taxes, assessments, levies, liabilities, obligations, encumbrances, water and sewer rents, and all other charges or claims of every nature and kind that may be imposed, suffered, placed, assessed, levied, or filed at any time against the mortgaged property or any part thereof. Insofar as any such tax, assessment, levy, liability, obligation, or encumbrance is of record, the same shall be promptly satisfied and discharged of record, and the original official document (such as, for instance, the tax receipt or the satisfaction paper officially endorsed or certified) shall be delivered to Mortgagee not later than such dates. Mortgagor shall provide proof of timely payment of such taxes to the Mortgagee prior to delinquency.

6. Prior Mortgages: The Mortgagor covenants and agrees to make all payments and perform all conditions and covenants called for in any prior mortgages now encumbering the property, and in the event of default in any such payment or payments, conditions or stipulations, the Mortgagee, without waiving the option to foreclose, herein reserves the right to make such

4

payments, or perform such conditions or stipulations, so as to maintain the prior mortgages and prevent a foreclosure thereof. Any and all such sums paid or expenses incurred on behalf of the Mortgagor, together with interest thereon from the date of payment at the rate of interest prescribed in the note underlying this mortgage, shall be added to the mortgage indebtedness and be secured by this mortgage,

In the event that the Mortgagor defaults in any payment or condition stipulated in any prior mortgage, or in the event of any default in a prior mortgage so as to cause such prior mortgage to be accelerated and become due and payable during the continuance of this mortgage, then Mortgagee may declare the Note and this Mortgage in default and the entire sums less any unearned interest secured by this Mortgage shall become due and payable, at the option of the Mortgagee.

7.    Security Agreement: This mortgage constitutes a security agreement under the Uniform Commercial Code and creates a security interest in the personal property included in the mortgaged property. Mortgagor shall execute, deliver, file, and refile any financing statements or other security agreements Mortgagee may require from time to time to confirm the lien of this mortgage with respect to such property. Without limiting the foregoing, Mortgagor hereby irrevocably appoints Mortgagee attorney-in-fact for Mortgagor to execute, deliver, and file such instruments for and on behalf of Mortgagor.

8.    Limitation on Additional Financing: Mortgagor shall not undertake additional financing secured by any lien or security interest on the mortgaged property without first obtaining Mortgagee's written consent. Any violation of the foregoing limitation shall, at the option of Mortgagee, be deemed an event of default hereunder.

9.    Compliance with Law and Regulations: Mortgagor shall comply with all laws, ordinances, regulations, and orders of all federal, state, municipal, and other governmental authorities relating to the mortgaged property.

10.    Inspection: Mortgagee and any persons authorized by Mortgagee shall have the right at any time, upon reasonable notice to Mortgagor, to enter the mortgaged property at a reasonable hour to inspect and photograph its condition and state of repair.

11.    Declaration of No Setoff. Within one week after requested to do so by Mortgagee, Mortgagor shall certify to Mortgagee or to any proposed assignee of this mortgage, in a writing duly acknowledged, the amount of principal, interest, and other charges then owing on the obligation secured by this mortgage and whether there are any setoffs or defenses against it, and, if such setoffs or defenses are asserted, a detailed explanation thereof.

12.    Required Notices: Mortgagor shall notify Mortgagee promptly of the occurrence of any of the following:

(a)    a fire or other casualty causing damage to the mortgaged property;

5

Book17070/Page1657

(b)    receipt of notice of condemnation of the mortgaged property;

(c)    receipt of notice from any governmental authority relating to the structure, use, or occupancy of the mortgaged property;

(d)    substantial change in the occupancy of the mortgaged property; or

(e)    commencement of any litigation affecting the mortgaged property.

Condemnation:

(a)    In the event of any condemnation or taking of any part of the mortgaged property by eminent domain, alteration of the grade of any street, or other injury to or decrease in the value of the mortgaged property by any public or quasi-public authority or corporation, all proceeds awarded for the taking of or damage to the mortgaged property shall be paid to Mortgagee, its successors or assigns, up to the amount then unpaid on this Mortgage. Mortgagor shall continue to pay the installments of principal, interest, and other charges until payment of the proceeds shall have been received by Mortgagee of the full amount secured hereunder. All the proceeds shall be applied in the order and in the amounts that Mortgagee, in Mortgagee's sole discretion may elect, to the payment of principal (whether or not then due and payable); interest or any sums secured by this Mortgage; or toward payment to Mortgagor, on such reasonable terms as Mortgagee may specify, to be used for the sole purpose of altering or restoring any part of the mortgaged property that may have been altered, damaged, or destroyed as a result of the taking, alteration of grade, or other injury to the mortgaged property.

(b)    If, prior to the receipt of the proceeds by Mortgagee, the mortgaged property is sold on foreclosure of this mortgage, Mortgagee shall have the right to receive the proceeds to the extent of:

(i)    any deficiency found to be due to Mortgagee in connection with the foreclosure sale, with legal interest thereon, and

(ii)    reasonable counsel fees, costs, and disbursements incurred by Mortgagee in connection with collection of the proceeds and the proceedings to establish the deficiency.

(c)    If the amount of the initial award of damages for the condemnation is insufficient to pay in full the indebtedness secured hereby with interest and other appropriate charges, Mortgagee shall have the right to prosecute to final determination or settlement an appeal or other appropriate proceedings in the name of Mortgagee or Mortgagor, for which Mortgagee is hereby appointed irrevocably as attorney-in-fact for Mortgagor, which appointment being for security, is irrevocable. In that event, the expenses of the proceedings, including reasonable counsel fees, shall be paid first out of the proceeds, and only the excess, if any, paid to the Mortgagee shall be credited against the amounts due under this Mortgage.

6

(d)    Nothing herein shall limit the rights otherwise available to Mortgagee, at law or in equity, including the right to intervene as a party to any condemnation proceeding.

14.    Restriction on Transfer: In the event the mortgaged property or any interest therein, is sold, transferred or conveyed by deed, agreement for deed, lease with option to purchase, or by any other means of conveyance, without the prior written consent of the Mortgagee, then the entire principal due under this mortgage at the time of such transfer shall become immediately due and payable without notice to Mortgagor, it being specifically understood that this mortgage evidences an extension of credit by Mortgagee to Mortgagor personally, for the benefit of Mortgagor and no other party.

15.    Mortgagee's Right to Remedy Defaults: If Mortgagor fails to pay real estate or other taxes, assessments, water and sewer rents, charges and claims, insurance premiums, or sums due under any prior lien or insurance premiums, fails to make necessary repairs, or permits waste, Mortgagee, at its election and without notice to Mortgagor, shall have the right to make any payment or expenditure and to take any action that Mortgagor should have made or taken or which Mortgagee deems advisable to protect the security of this Mortgage or the mortgaged property, without prejudice to any of Mortgagee's rights or remedies available hereunder or otherwise, at law or in equity. All such sums and costs advanced by Mortgagee pursuant to this mortgage shall be due immediately from Mortgagor to Mortgagee, shall be secured hereby, and shall bear interest at the highest rate allowed by law. Mortgagee shall be subrogated to any rights, equities, and liens so discharged.

16.    Events of Default: The following shall constitute events of default hereunder:

(a)    Failure of Mortgagor to pay any installment of principal or interest, or any other sum, within thirty (30) days after the date it is due under the Note or this Mortgage.

(b)    Mortgagor's nonperformance of or noncompliance with any other agreements, conditions, covenants, provisions, or stipulations contained in the Note or in this Mortgage, or in any other document securing such Note.

(c)    Any assignment for the benefit of creditors made by Mortgagor, any shareholder or partner of Mortgagor, or any person executing any guaranty given to Mortgagee in connection with the Note.

(d)    Appointment of a receiver, liquidator or trustee of Mortgagor (which term for the purposes of this subparagraph (d) shall be defined to include any shareholder or any partner of Mortgagor) or of any of the property of Mortgagor; insolvency of Mortgagor or the adjudication of Mortgagor as bankrupt; the filing by Mortgagor of any petition for the bankruptcy, reorganization, or arrangement of Mortgagor pursuant to the Federal Bankruptcy Act or any similar statute; the institution by Mortgagor of any proceeding for the dissolution or liquidation of Mortgagor; or the filing against Mortgagor of any such petition or institution against Mortgagor of such proceedings, unless the same be discharged within 30 days after the filing or institution.

7

17.    Remedies:

(a)    Upon the happening of any event of default, this conveyance shall become absolute, and the entire unpaid balance of the principal, the accrued interest, and all other sums secured by this Mortgage shall become immediately due and payable, at the option of Mortgagee, without notice or demand.

(b)    When the entire indebtedness shall become due and payable because of maturity, the occurrence of any event of default, or otherwise, then forthwith:

(i)    Foreclosure: Mortgagee may institute an action to foreclose this Mortgage against the mortgaged property or take such other action at law or in equity for the enforcement of this Mortgage and realization on the mortgage security or any other security herein or elsewhere provided for, as the law may allow, and may proceed therein to final judgment and execution for the entire unpaid balance of the principal debt, with interest at the highest rate allowed by law, together with all other sums due by Mortgagor in accordance with the provisions of the Note and this Mortgage, including all sums that may have been advanced by Mortgagee to Mortgagor after the date of this Mortgage, and all sums that may have been advanced by Mortgagee for taxes, water or sewer rents, charges or claims, payments on prior liens, insurance or repairs to the mortgaged property, all costs of suit, with interest, together with attorney's fees; or

(ii)    Assignment of Rents and Profits: Mortgagee may collect all rents and profits, it being the intent of the parties that the lien hereof shall extend to and include the use, rents, and profits of said premises. Notwithstanding the foregoing, the Mortgagor shall have the right to remain in possession of said premises and enjoy the use of, and to receive rents and profits thereof, without accounting to the Mortgagee therefor, so long as there shall be no default hereunder, provided that in the event of any such default hereunder, the Mortgagee shall be entitled to the possession and use of said mortgaged premises, and to receive and apply the net rents and profits thereof, upon and toward the payment of the indebtedness hereby secured. Mortgagee shall, after deducting all costs of collection and administration expenses, apply the net rentals to any or all of the following in such order and amounts as Mortgagee, in Mortgagee's sole discretion, may elect: the payment of taxes, water and sewer rents, charges and claims, insurance premiums, and all other carrying charges, and to the maintenance, repair, or restoration of the mortgaged property, and on account of and in reduction of the principal or interest, or both, hereby secured.  In and for that purpose, Mortgagor hereby assigns to Mortgagee all rentals due and to become due under any lease or leases or rights to use and occupation of the mortgaged property hereafter created, as well as all rights and remedies provided in such lease or leases or at law or in equity for the collection of the rentals.  Mortgagee shall be entitled to the appointment of a receiver of all the rents, issues, and profits, as a matter of strict right, regardless of the value of the mortgaged property and the solvency or insolvency of Mortgagor and other persons liable to pay such indebtedness.  Mortgagor hereby specifically waives the right to object to the appointment of a receiver as aforesaid and hereby expressly consents that such appointment shall be made as an admitted equity and that the same may be done without notice to Mortgagor.

8

(c)     Mortgagee shall have the right, from time to time, to bring an appropriate action to recover any sums required to be paid by Mortgagor under the terms of this mortgage, as they become due, without regard to whether the principal indebtedness or any other sums secured by the note and this Mortgage shall be due, and without prejudice to the right of Mortgagee thereafter to bring an action to foreclose this mortgage, or any other action, for any default by Mortgagor existing at the time the earlier action was commenced.

(d)     Any real estate sold pursuant to any action to foreclose this Mortgage or pursuant to any other judicial proceeding under this Mortgage or the Note, may be sold in one parcel, as an entirety, or in such parcels or condominium units, and in such manner or order as Mortgagee, in its sole discretion, may elect.

18.     Rights and Remedies Cumulative:

(a)     The rights and remedies of Mortgagee as provided in the Note and in this Mortgage shall be cumulative and concurrent; may be pursued separately or together against Mortgagor, the mortgaged property, or both, at the sole discretion of Mortgagee; and they may be exercised as often as occasion therefor shall arise.  The failure to exercise any such right or remedy shall in no event be construed as a waiver or release thereof.

(b)     Any failure by Mortgagee to insist upon strict performance by Mortgagor of any of the terms and provisions of this mortgage or the note shall not be deemed to be a waiver of any of the terms or provisions thereof, and Mortgagee shall have the right thereafter to insist upon strict performance of any and all of them.

(c)     Neither Mortgagor nor any other person now or hereafter obligated for payment of all or any part of the sums now or hereafter secured by this Mortgage shall be relieved of such obligation by reason of the failure of Mortgagee to comply with any request of Mortgagor or of any other person so obligated to take action to foreclose on this Mortgage or otherwise enforce any provisions of the Mortgage or the Note; by reason of the release, regardless of consideration, of all or any part of the security held for the indebtedness secured by this Mortgage; or by reason of any agreement or stipulation between any subsequent owner of the mortgaged property and Mortgagee extending the time of payment or modifying the terms of the Mortgage or Note without first having obtained the consent of Mortgagor or such other person. In the latter event, Mortgagor and all such other persons shall continue to be liable to make payments according to the terms of any such extension or modification agreement, unless expressly released and discharged in writing by Mortgagee.

(d)     Mortgagee may release, regardless of consideration, any part of the security held for the indebtedness secured by this Mortgage without, as to the remainder of the security, in any way impairing or affecting the lien of this Mortgage or its priority over any subordinate lien.

(e)     For payment of the indebtedness secured hereby, Mortgagee may resort to any other security therefor held by Mortgagee in such order and manner as Mortgagee may elect.

9

Book17070/Page1661

19.    Counsel Fees: If Mortgagee becomes a party to any suit or proceeding affecting the mortgaged property or title thereto, the lien created by this mortgage or Mortgagee's interest therein, or, if Mortgagee engages counsel to collect any of the indebtedness or to enforce performance of the agreements, conditions, covenants, provisions, or stipulations of this Mortgage or the Note, Mortgagee's costs, expenses, and reasonable counsel fees, whether or not suit is instituted, shall be paid to Mortgagee by Mortgagor on demand with interest at the then effective rate set forth in the Note, and, until paid, these amounts of money shall be deemed to be part of the indebtedness evidenced by the Note and secured by this Mortgage.

20.    Future Advances: Pursuant to F.S. §697.04, this Mortgage shall secure not only the existing indebtedness evidenced by the Note but also such future advances as may be made by Mortgagee to Mortgagor within 20 years from the date hereof to the same extent as if such future advances were made on the date of the execution of this Mortgage. The total amount of indebtedness that shall be so secured by this mortgage may decrease or increase from time to time, provided that the total unpaid balance so secured at any one time shall not exceed a principal amount of $89,500.00, PLUS interest thereon and plus any disbursements made for the payment of taxes, levies, or insurance on the property covered by the lien of this Mortgage, together with interest on such disbursements.

21.    Amendment: This Mortgage cannot be changed or amended except by agreement in writing signed by the party against whom enforcement of the change is sought.

22.    Captions: The captions preceding the text of the paragraphs or subparagraphs of this Mortgage are inserted only for convenience of reference and shall not constitute a part of this Mortgage, and they shall not in any way affect its meaning, construction, or effect.

IN WITNESS WHEREOF, the Mortgagor has caused this Mortgage to be duly executed as of the day and year first above written.

Signed, sealed, and delivered
in the presence of:

GUERRINI FAMILY LIMITED PARTNERSHIP, a Florida limited partnership

By:    GUERRINI CORPORATION, a Florida corporation, its General Partner

_____
Name: LEON H. Yohe

By: _____
Mary K. Haire/ Vice President

_____
Name: Marisol Valencia

10

Book17070/Page1662

STATE OF FLORIDA
COUNTY OF HILLSBOROUGH

SWORN TO AND SUBSCRIBED before me this _10_ day of October, 2006, by Mary K. Haire, as Vice President of Guerrini Corporation, a Florida corporation that is General Partner of Guerrini Family Limited Partnership, who is personally known to me.

Notary Public, State of Florida

DARA MARTIN
Comm# DD0429797
Expires 5/16/2009
Bonded thru (800)432-4254
Florida Notary Assn., Inc.

(SEAL)

11

This is not a certified copy

Book17070/Page1663

EXHIBIT "A"

## PROMISSORY NOTE

FOR VALUE RECEIVED, the Guerrini Family Limited Partnership, a Florida limited partnership ("Borrower"), hereby promises to pay to Mary K. Haire ("Lender"), the sum of $87,300.00, or so much thereof as may be advanced by Lender hereunder, together with interest thereon at the rate of 17.9% per annum on the unpaid balance from the date of each advance to the date of payment. All principal and interest shall be due on the earlier of (1) the sale of 16229 Villareal de Avila, Tampa; or (2) December 31, 2006. Payments not made within ten (10) days of due date shall be subject to a late charge of 5% of said payment. All payments shall be first applied to interest, and the balance to principal. This Note may be prepaid, at any time, in whole or in part, without penalty.

This Note shall at the option of the holder hereof be immediately due and payable upon failure to make any payment due hereunder or for breach of any condition of any security interest, mortgage, pledge agreement or guaranty granted as collateral security for this Note or breach of any condition of any security agreement or mortgage, if any, having a priority over any security agreement or mortgage on collateral granted, in whole or in part, as collateral security for this Note or upon the filing by any of the undersigned of an assignment for the benefit of creditors, bankruptcy, or for relief under any provisions of the Bankruptcy Code; or by suffering an involuntary petition in bankruptcy or receivership not vacated within thirty days. In the event this Note shall be in default, and placed with an attorney for collection, then the undersigned agrees to pay all reasonable attorney's fees and costs of collection. The parties agree that venue for any action under this Note shall be in the state or federal courts in Hillsborough County, Florida.

All payments hereunder shall be made to Mary K. Haire, 2553 SW 210th Avenue, Dunellon, FL 34431, or such other address as may from time to time be designated by any holder hereof. The undersigned waives demand, presentment and protest and all notices thereof and further agrees to remain bound, notwithstanding any extension, modification, waiver, or other indulgence by any holder of this Note, or upon the exchange, substitution, or release of any collateral granted as security for this Note.

Signed and sealed in Tampa, Florida, as of the _____ day of October, 2006.

GUERRINI FAMILY LIMITED PARTNERSHIP

By: GUERRINI CORPORATION, General Partner

By:_____
Mary K. Haire, Vice President

12

Exhibit C

Prepared by and return to:

G. T. Hodges, P.A.
905 Shaded Water Way
Lutz, FL 33549

This is not a certified copy

INSTR # 2006498171

O BK 17070 PG 1665

Pgs 1665 - 1676; (12pgs)
RECORDED 10/17/2006 09:18:46 AM
PAT FRANK CLERK OF COURT
HILLSBOROUGH COUNTY
DOC TAX PD(F.S.201.08) 280.00
INT.TAX PD(F.S.199) 160.00
DEPUTY CLERK V Beery

## SIXTH MORTGAGE

THIS MORTGAGE made on October 10 , 2006, by GUERRINI FAMILY LIMITED PARTNERSHIP, a Florida limited partnership, whose post office address is 9545 North Florida Avenue, Tampa, Florida 33612, (Mortgagor), to GUERRINI CORPORATION, a Florida corporation, whose post office address is 9545 North Florida Avenue, Tampa, Florida 33612 (Mortgagee).

### RECITALS

Mortgagor is indebted to Mortgagee, having executed and delivered to Mortgagee that certain Promissory Note (the "Note") dated of even date herewith, in the original principal sum of EIGHTY THOUSAND AND NO/100 DOLLARS ($80,000.00), all of which is secured by this Mortgage, according to the terms and conditions specified in the note attached and incorporated herein as Exhibit "A";

In consideration of the indebtedness and to secure the payment to Mortgagee of the principal with interest and all other sums provided for in the Note and in this Mortgage, including, but not limited to, any future advances, if any, and for performance of the agreements, conditions, covenants, provisions, and stipulations contained herein and therein, and in certain other agreements and instruments made and given by Mortgagor to Mortgagee in connection therewith, Mortgagor has granted, bargained, sold, and conveyed and, by these presents, does grant, bargain, sell, and convey unto Mortgagee that tract or parcel of land in Hillsborough County, Florida, more particularly described as follows:

Lots 19, 20 and 21 in Block 5 of AVILA UNIT NO. 5, according to the plat thereof recorded in Plat Book 59, Page 44, of the Public Records of Hillsborough County, Florida.

TOGETHER with all the tenements, hereditaments, easements, appurtenances, passages, waters, water courses, riparian rights, other rights and privileges thereof or in any way now or hereafter appertaining, including any other claim at law or in equity as well as any after acquired title, franchise, or license and the reversions and remainders thereof; and

TOGETHER with all buildings and improvements of every kind and description now or hereafter erected or placed thereon and all materials intended for construction, reconstruction, alteration, and repairs of such improvements now or hereafter erected thereon, all of which materials shall be deemed to be included within the mortgaged premises immediately upon the delivery thereof to such mortgaged premises, and all fixtures and articles of personal property now or hereafter owned by Mortgagor and attached to or contained in and used in connection with said premises, including but not limited to all appliances, all plumbing, heating, lighting, ventilating, refrigerating, incinerating, air-conditioning, hot water heating, and sprinkler equipment and fixtures and appurtenances thereto; and all renewals or replacements thereof or articles in substitution therefor, whether or not the same are or shall be attached to said land or building or buildings in any manner; it being mutually agreed that all the aforesaid property owned by said Mortgagor and placed by it on said premises shall, so far as permitted by law, be deemed to be affixed to the realty and covered by this Mortgage. Such tract or parcel of land and buildings, improvements, fixtures, machinery, equipment, tenements, personal property, and property interests being hereinafter collectively called the "mortgaged property."

TO HAVE AND TO HOLD the above-granted and described mortgaged property to Mortgagee, its successors and assigns, forever.

And Mortgagor hereby represents, warrants, and covenants with Mortgagee that Mortgagor is indefeasibly seized of the mortgaged property in fee simple; that Mortgagor has full power and lawful right to convey the same in fee simple as aforesaid, that it shall be lawful for Mortgagee at all times peaceably and quietly to enter upon, hold, occupy, and enjoy the mortgaged property and every part thereof; that the mortgaged property is free from all liens and encumbrances, except that certain first mortgage in favor of MERS, as nominee for SouthTrust Mortgage Corporation, recorded in Official Records Book 13822, Page 1399 of the Public Records of Hillsborough County, Florida, that certain second mortgage in favor of Mary K. Haire and recorded in Official Records Book 15024, Page 153 of the Public Records of Hillsborough County, Florida, that certain third mortgage in favor of Mary K. Haire and recorded in Official Records Book 15791, Page 980 of the Public Records of Hillsborough County, Florida, that certain fourth mortgage recorded by Lender in favor of Mary K. Haire recorded in Official Records Book 16553, Page 231 of the Public Records of Hillsborough County, Florida; and that certain fifth mortgage recorded by Lender in favor of Mary K. Haire recorded in Official Records Book _____, Page _____ of the Public Records of Hillsborough County, Florida; that all property, fixtures, and equipment described herein will be fully paid for and free from all liens, encumbrances, title retaining contracts, and security interests when delivered and/or installed upon the mortgaged property; that such property, fixtures, and equipment shall be deemed to be realty and a part of the freehold; that Mortgagor will make such further assurances to prove the fee simple title to all and singular the mortgaged property in Mortgagee and to prove the lien and

2

priority of this mortgage, as may be reasonably required, and that Mortgagor does hereby and will forever fully warrant and defend the lien and priority of this mortgage and the title to the mortgaged property and every part thereof against the lawful claims and demands of all persons whomsoever.

PROVIDED ALWAYS, and these presents are upon the express condition that, if Mortgagor or the successors or assigns of Mortgagor shall pay unto Mortgagee, its successors or assigns, the sums of money secured hereby, and any renewals or extensions thereof in whatever form, and the interest thereon as it shall become due, according to the true intent and meaning thereof, together with all advances hereunder, costs, charges, and expenses, including a reasonable attorney's fee, which Mortgagee may incur in collecting the same by foreclosure or otherwise; and shall duly, promptly, and fully perform, discharge, execute, effect, complete, comply with, and abide by each and every one of the stipulations, agreements, conditions, and covenants of the Note, this Mortgage, and other documents or instruments given by Mortgagor to Mortgagee in connection herewith, then this mortgage and the estate hereby created shall cease and be NULL AND VOID and this instrument shall be released by Mortgagee, at the cost and expense of Mortgagor.

MORTGAGOR COVENANTS AND AGREES to and with Mortgagee that, until the indebtedness secured hereby is fully repaid:

1. Payment and Performance: Mortgagor shall pay Mortgagee, in accordance with the terms of the Note and this Mortgage, the principal, interest, and other sums therein set forth; and Mortgagor shall perform and comply with all the agreements, conditions, covenants, provisions, and stipulations of the Note and this Mortgage, the terms of which are incorporated herein by reference. Any prepayment under the promissory note secured hereby, in whatever amount, shall be applied to principal only, and it is expressly stipulated and agreed that any such prepayment shall not suspend or affect Mortgagor's obligation to make any periodic installment payments provided for in the said Note.

2.     Interest Rate: Notwithstanding any provision contained in this Mortgage or in the Note secured hereby, the total liability for payment of interest, or in the nature of interest, shall not exceed the limits now imposed by the applicable usury law, including the applicable choice of law rules. In the event of the acceleration of the Note hereby secured, the total charges for interest and in the nature of interest shall not exceed the maximum amount allowed by law; any excess portion of such charges that may have been prepaid shall be refunded to the maker thereof. Such refund may be made by application of the amount involved against the sums then due hereunder, but such crediting shall not cure or waive the default occasioning acceleration. Nothing herein contained nor in any transaction related hereto shall be construed or shall so operate either presently or prospectively to require Mortgagor to make any payment or do any act contrary to law, but, if any clause and provision herein contained shall otherwise so operate to invalidate this Mortgage, in whole or in part, then such clauses and provisions only shall be held for naught as though not herein contained and the remainder of this Mortgage shall remain operative and in full force and effect.

3

3. **Maintenance of Mortgaged Property:** Mortgagor shall abstain from and shall not permit the commission of waste, impairment or deterioration in or about the mortgaged property; Mortgagor shall not remove, demolish, or alter the structural character of any building erected at any time on the mortgaged property, without the prior written consent of Mortgagee; Mortgagor shall not permit the mortgaged property to become vacant, deserted, or unguarded; and Mortgagor shall maintain the mortgaged property in good condition and repair, reasonable wear and tear excepted.

4. **Insurance:** Mortgagor shall keep the mortgaged property continuously insured against hazard and against flood if within a flood prone area, in a sum not less than the full insurable value by a company or companies acceptable to Mortgagee. All policies shall be in form satisfactory to Mortgagee; shall be maintained in full force and effect; shall be assigned and delivered to Mortgagee at or prior to closing, with premiums prepaid, as collateral security for payment of the indebtedness secured hereby; shall be endorsed with a standard mortgagee clause in favor of Mortgagee; and, shall provide for at least 30 days' notice of cancellation to Mortgagee. If the insurance, or any part thereof, shall expire, be withdrawn, or become void or unsafe by Mortgagor's breach of any condition thereof, or become void or unsafe by reason of the failure or impairment of the capital of the insurer, or, if for any reason whatever the insurance shall be unsatisfactory to Mortgagee, Mortgagor shall place new insurance on the mortgaged property, satisfactory to Mortgagee. All renewal policies, with premiums paid, shall be delivered to Mortgagee at least 30 days before expiration of the old policies. In the event of loss, Mortgagor will give immediate notice thereof to Mortgagee, and Mortgagee may make proof of loss if not made promptly by Mortgagor. Each insurance company is hereby authorized and directed to make payment under such insurance, including return of unearned premiums, directly to Mortgagee instead of to Mortgagor and Mortgagee jointly, and Mortgagor appoints Mortgagee, irrevocably, as Mortgagor's attorney-in-fact to endorse any draft therefor. At its election, Mortgagee shall have the right to retain and apply the proceeds of any such insurance to reduction of the indebtedness secured hereby, or to restoration or repair of the property damaged. If Mortgagee becomes the owner of the mortgaged property or any part thereof by foreclosure or otherwise, such policies, including all right, title, and interest of the Mortgagor thereunder, shall become the absolute property of Mortgagee.

5. **Taxes and Other Charges:** Mortgagor shall pay, when due and payable and before interest or penalties are due thereon, all taxes, assessments, levies, liabilities, obligations, encumbrances, water and sewer rents, and all other charges or claims of every nature and kind that may be imposed, suffered, placed, assessed, levied, or filed at any time against the mortgaged property or any part thereof. Insofar as any such tax, assessment, levy, liability, obligation, or encumbrance is of record, the same shall be promptly satisfied and discharged of record, and the original official document (such as, for instance, the tax receipt or the satisfaction paper officially endorsed or certified) shall be delivered to Mortgagee not later than such dates. Mortgagor shall provide proof of timely payment of such taxes to the Mortgagee prior to delinquency.

6. **Prior Mortgages:** The Mortgagor covenants and agrees to make all payments and perform all conditions and covenants called for in any prior mortgages now encumbering the

4

Book17070/Page1668

property, and in the event of default in any such payment or payments, conditions or stipulations, the Mortgagee, without waiving the option to foreclose, herein reserves the right to make such payments, or perform such conditions or stipulations, so as to maintain the prior mortgages and prevent a foreclosure thereof. Any and all such sums paid or expenses incurred on behalf of the Mortgagor, together with interest thereon from the date of payment at the rate of interest prescribed in the note underlying this mortgage, shall be added to the mortgage indebtedness and be secured by this mortgage,

In the event that the Mortgagor defaults in any payment or condition stipulated in any prior mortgage, or in the event of any default in a prior mortgage so as to cause such prior mortgage to be accelerated and become due and payable during the continuance of this mortgage, then Mortgagee may declare the Note and this Mortgage in default and the entire sums less any unearned interest secured by this Mortgage shall become due and payable, at the option of the Mortgagee.

7.    Security Agreement: This mortgage constitutes a security agreement under the Uniform Commercial Code and creates a security interest in the personal property included in the mortgaged property. Mortgagor shall execute, deliver, file, and refile any financing statements or other security agreements Mortgagee may require from time to time to confirm the lien of this mortgage with respect to such property. Without limiting the foregoing, Mortgagor hereby irrevocably appoints Mortgagee attorney-in-fact for Mortgagor to execute, deliver, and file such instruments for and on behalf of Mortgagor.

8.    Limitation on Additional Financing: Mortgagor shall not undertake additional financing secured by any lien or security interest on the mortgaged property without first obtaining Mortgagee's written consent. Any violation of the foregoing limitation shall, at the option of Mortgagee, be deemed an event of default hereunder.

9.    Compliance with Law and Regulations: Mortgagor shall comply with all laws, ordinances, regulations, and orders of all federal, state, municipal, and other governmental authorities relating to the mortgaged property.

10.    Inspection: Mortgagee and any persons authorized by Mortgagee shall have the right at any time, upon reasonable notice to Mortgagor, to enter the mortgaged property at a reasonable hour to inspect and photograph its condition and state of repair.

11.    Declaration of No Setoff. Within one week after requested to do so by Mortgagee, Mortgagor shall certify to Mortgagee or to any proposed assignee of this mortgage, in a writing duly acknowledged, the amount of principal, interest, and other charges then owing on the obligation secured by this mortgage and whether there are any setoffs or defenses against it, and, if such setoffs or defenses are asserted, a detailed explanation thereof.

12.    Required Notices: Mortgagor shall notify Mortgagee promptly of the occurrence of any of the following:

5

Book17070/Page1669

(a)   a fire or other casualty causing damage to the mortgaged property;

(b)   receipt of notice of condemnation of the mortgaged property;

(c)   receipt of notice from any governmental authority relating to the structure, use, or occupancy of the mortgaged property;

(d)   substantial change in the occupancy of the mortgaged property; or

(e)   commencement of any litigation affecting the mortgaged property.

13.   Condemnation:

(a)   In the event of any condemnation or taking of any part of the mortgaged property by eminent domain, alteration of the grade of any street, or other injury to or decrease in the value of the mortgaged property by any public or quasi-public authority or corporation, all proceeds awarded for the taking of or damage to the mortgaged property shall be paid to Mortgagee, its successors or assigns, up to the amount then unpaid on this Mortgage. Mortgagor shall continue to pay the installments of principal, interest, and other charges until payment of the proceeds shall have been received by Mortgagee of the full amount secured hereunder. All the proceeds shall be applied in the order and in the amounts that Mortgagee, in Mortgagee's sole discretion may elect, to the payment of principal (whether or not then due and payable); interest or any sums secured by this Mortgage; or toward payment to Mortgagor, on such reasonable terms as Mortgagee may specify, to be used for the sole purpose of altering or restoring any part of the mortgaged property that may have been altered, damaged, or destroyed as a result of the taking, alteration of grade, or other injury to the mortgaged property.

(b)   If, prior to the receipt of the proceeds by Mortgagee, the mortgaged property is sold on foreclosure of this mortgage, Mortgagee shall have the right to receive the proceeds to the extent of:

(i)   any deficiency found to be due to Mortgagee in connection with the foreclosure sale, with legal interest thereon, and

(ii)   reasonable counsel fees, costs, and disbursements incurred by Mortgagee in connection with collection of the proceeds and the proceedings to establish the deficiency.

(c)   If the amount of the initial award of damages for the condemnation is insufficient to pay in full the indebtedness secured hereby with interest and other appropriate charges, Mortgagee shall have the right to prosecute to final determination or settlement an appeal or other appropriate proceedings in the name of Mortgagee or Mortgagor, for which Mortgagee is hereby appointed irrevocably as attorney-in-fact for Mortgagor, which appointment being for security, is irrevocable. In that event, the expenses of the proceedings, including

6

Book17070/Page1670

reasonable counsel fees, shall be paid first out of the proceeds, and only the excess, if any, paid to the Mortgagee shall be credited against the amounts due under this Mortgage.

(d)     Nothing herein shall limit the rights otherwise available to Mortgagee, at law or in equity, including the right to intervene as a party to any condemnation proceeding.

14.     Restriction on Transfer: In the event the mortgaged property or any interest therein, is sold, transferred or conveyed by deed, agreement for deed, lease with option to purchase, or by any other means of conveyance, without the prior written consent of the Mortgagee, then the entire principal due under this mortgage at the time of such transfer shall become immediately due and payable without notice to Mortgagor, it being specifically understood that this mortgage evidences an extension of credit by Mortgagee to Mortgagor personally, for the benefit of Mortgagor and no other party.

15.     Mortgagee's Right to Remedy Defaults: If Mortgagor fails to pay real estate or other taxes, assessments, water and sewer rents, charges and claims, insurance premiums, or sums due under any prior lien or insurance premiums, fails to make necessary repairs, or permits waste, Mortgagee, at its election and without notice to Mortgagor, shall have the right to make any payment or expenditure and to take any action that Mortgagor should have made or taken or which Mortgagee deems advisable to protect the security of this Mortgage or the mortgaged property, without prejudice to any of Mortgagee's rights or remedies available hereunder or otherwise, at law or in equity. All such sums and costs advanced by Mortgagee pursuant to this mortgage shall be due immediately from Mortgagor to Mortgagee, shall be secured hereby, and shall bear interest at the highest rate allowed by law. Mortgagee shall be subrogated to any rights, equities, and liens so discharged.

16.     Events of Default: The following shall constitute events of default hereunder:

(a)     Failure of Mortgagor to pay any installment of principal or interest, or any other sum, within thirty (30) days after the date it is due under the Note or this Mortgage.

(b)     Mortgagor's nonperformance of or noncompliance with any other agreements, conditions, covenants, provisions, or stipulations contained in the Note or in this Mortgage, or in any other document securing such Note.

(c)     Any assignment for the benefit of creditors made by Mortgagor, any shareholder or partner of Mortgagor, or any person executing any guaranty given to Mortgagee in connection with the Note.

(d)     Appointment of a receiver, liquidator or trustee of Mortgagor (which term for the purposes of this subparagraph (d) shall be defined to include any shareholder or any partner of Mortgagor) or of any of the property of Mortgagor; insolvency of Mortgagor or the adjudication of Mortgagor as bankrupt; the filing by Mortgagor of any petition for the bankruptcy, reorganization, or arrangement of Mortgagor pursuant to the Federal Bankruptcy Act or any similar statute; the institution by Mortgagor of any proceeding for the dissolution or

7

liquidation of Mortgagor; or the filing against Mortgagor of any such petition or institution against Mortgagor of such proceedings, unless the same be discharged within 30 days after the filing or institution.

17.    Remedies:

(a)    Upon the happening of any event of default, this conveyance shall become absolute, and the entire unpaid balance of the principal, the accrued interest, and all other sums secured by this Mortgage shall become immediately due and payable, at the option of Mortgagee, without notice or demand.

(b)    When the entire indebtedness shall become due and payable because of maturity, the occurrence of any event of default, or otherwise, then forthwith:

(i)    Foreclosure: Mortgagee may institute an action to foreclose this Mortgage against the mortgaged property or take such other action at law or in equity for the enforcement of this Mortgage and realization on the mortgage security or any other security herein or elsewhere provided for, as the law may allow, and may proceed therein to final judgment and execution for the entire unpaid balance of the principal debt, with interest at the highest rate allowed by law, together with all other sums due by Mortgagor in accordance with the provisions of the Note and this Mortgage, including all sums that may have been advanced by Mortgagee to Mortgagor after the date of this Mortgage, and all sums that may have been advanced by Mortgagee for taxes, water or sewer rents, charges or claims, payments on prior liens, insurance or repairs to the mortgaged property, all costs of suit, with interest, together with attorney's fees; or

(ii)    Assignment of Rents and Profits: Mortgagee may collect all rents and profits, it being the intent of the parties that the lien hereof shall extend to and include the use, rents, and profits of said premises. Notwithstanding the foregoing, the Mortgagor shall have the right to remain in possession of said premises and enjoy the use of, and to receive rents and profits thereof, without accounting to the Mortgagee therefor, so long as there shall be no default hereunder, provided that in the event of any such default hereunder, the Mortgagee shall be entitled to the possession and use of said mortgaged premises, and to receive and apply the net rents and profits thereof, upon and toward the payment of the indebtedness hereby secured. Mortgagee shall, after deducting all costs of collection and administration expenses, apply the net rentals to any or all of the following in such order and amounts as Mortgagee, in Mortgagee's sole discretion, may elect: the payment of taxes, water and sewer rents, charges and claims, insurance premiums, and all other carrying charges, and to the maintenance, repair, or restoration of the mortgaged property, and on account of and in reduction of the principal or interest, or both, hereby secured. In and for that purpose, Mortgagor hereby assigns to Mortgagee all rentals due and to become due under any lease or leases or rights to use and occupation of the mortgaged property hereafter created, as well as all rights and remedies provided in such lease or leases or at law or in equity for the collection of the rentals. Mortgagee shall be entitled to the appointment of a receiver of all the rents, issues, and profits, as a matter of strict right, regardless of the value of the mortgaged property and the solvency or insolvency of Mortgagor and other persons liable to pay such indebtedness. Mortgagor hereby specifically waives the right to object to the

8

appointment of a receiver as aforesaid and hereby expressly consents that such appointment shall be made as an admitted equity and that the same may be done without notice to Mortgagor.

(c) Mortgagee shall have the right, from time to time, to bring an appropriate action to recover any sums required to be paid by Mortgagor under the terms of this mortgage, as they become due, without regard to whether the principal indebtedness or any other sums secured by the note and this Mortgage shall be due, and without prejudice to the right of Mortgagee thereafter to bring an action to foreclose this mortgage, or any other action, for any default by Mortgagor existing at the time the earlier action was commenced.

(d) Any real estate sold pursuant to any action to foreclose this Mortgage or pursuant to any other judicial proceeding under this Mortgage or the Note, may be sold in one parcel, as an entirety, or in such parcels or condominium units, and in such manner or order as Mortgagee, in its sole discretion, may elect.

18.   Rights and Remedies Cumulative:

(a) The rights and remedies of Mortgagee as provided in the Note and in this Mortgage shall be cumulative and concurrent; may be pursued separately or together against Mortgagor, the mortgaged property, or both, at the sole discretion of Mortgagee; and they may be exercised as often as occasion therefor shall arise. The failure to exercise any such right or remedy shall in no event be construed as a waiver or release thereof.

(b) Any failure by Mortgagee to insist upon strict performance by Mortgagor of any of the terms and provisions of this mortgage or the note shall not be deemed to be a waiver of any of the terms or provisions thereof, and Mortgagee shall have the right thereafter to insist upon strict performance of any and all of them.

(c) Neither Mortgagor nor any other person now or hereafter obligated for payment of all or any part of the sums now or hereafter secured by this Mortgage shall be relieved of such obligation by reason of the failure of Mortgagee to comply with any request of Mortgagor or of any other person so obligated to take action to foreclose on this Mortgage or otherwise enforce any provisions of the Mortgage or the Note; by reason of the release, regardless of consideration, of all or any part of the security held for the indebtedness secured by this Mortgage; or by reason of any agreement or stipulation between any subsequent owner of the mortgaged property and Mortgagee extending the time of payment or modifying the terms of the Mortgage or Note without first having obtained the consent of Mortgagor or such other person. In the latter event, Mortgagor and all such other persons shall continue to be liable to make payments according to the terms of any such extension or modification agreement, unless expressly released and discharged in writing by Mortgagee.

(d) Mortgagee may release, regardless of consideration, any part of the security held for the indebtedness secured by this Mortgage without, as to the remainder of the security, in any way impairing or affecting the lien of this Mortgage or its priority over any subordinate lien.

9

Book17070/Page1673

(e)     For payment of the indebtedness secured hereby, Mortgagee may resort to any other security therefor held by Mortgagee in such order and manner as Mortgagee may elect.

19.     Counsel Fees: If Mortgagee becomes a party to any suit or proceeding affecting the mortgaged property or title thereto, the lien created by this mortgage or Mortgagee's interest therein, or, if Mortgagee engages counsel to collect any of the indebtedness or to enforce performance of the agreements, conditions, covenants, provisions, or stipulations of this Mortgage or the Note, Mortgagee's costs, expenses, and reasonable counsel fees, whether or not suit is instituted, shall be paid to Mortgagee by Mortgagor on demand with interest at the then effective rate set forth in the Note, and, until paid, these amounts of money shall be deemed to be part of the indebtedness evidenced by the Note and secured by this Mortgage.

20.     Future Advances: Pursuant to F.S. §697.04, this Mortgage shall secure not only the existing indebtedness evidenced by the Note but also such future advances as may be made by Mortgagee to Mortgagor within 20 years from the date hereof to the same extent as if such future advances were made on the date of the execution of this Mortgage. The total amount of indebtedness that shall be so secured by this mortgage may decrease or increase from time to time, provided that the total unpaid balance so secured at any one time shall not exceed a principal amount of $80,000.00, PLUS interest thereon and plus any disbursements made for the payment of taxes, levies, or insurance on the property covered by the lien of this Mortgage, together with interest on such disbursements.

21.     Amendment: This Mortgage cannot be changed or amended except by agreement in writing signed by the party against whom enforcement of the change is sought.

22.     Captions: The captions preceding the text of the paragraphs or subparagraphs of this Mortgage are inserted only for convenience of reference and shall not constitute a part of this Mortgage, and they shall not in any way affect its meaning, construction, or effect.

IN WITNESS WHEREOF, the Mortgagor has caused this Mortgage to be duly executed as of the day and year first above written.

Signed, sealed, and delivered
in the presence of:

GUERRINI FAMILY LIMITED PARTNERSHIP, a Florida limited partnership

By:     GUERRINI CORPORATION, a Florida corporation, its General Partner

Name: _Leon H. Yohe_

By: _Mary K. Haire_
Mary K. Haire, Vice President

_Marisol Valencia_

10

Name:

STATE OF FLORIDA
COUNTY OF HILLSBOROUGH

SWORN TO AND SUBSCRIBED before me this __10__ day of October, 2006, by Mary K. Haire, as Vice President of Guerrini Corporation, a Florida corporation that is General Partner of Guerrini Family Limited Partnership, who is personally known to me.

Dara Martin

Notary Public, State of Florida

(SEAL)

DARA MARTIN
Comm# DD0429797
Expires 5/16/2009
Bonded thru (800)432-4254
Florida Notary Assn., Inc.

11

Book17070/Page1675

EXHIBIT "A"

PROMISSORY NOTE

FOR VALUE RECEIVED, the Guerrini Family Limited Partnership, a Florida limited partnership ("Borrower"), hereby promises to pay to Guerrini Corporation ("Lender"), the sum of $80,000.00, or so much thereof as may be advanced by Lender hereunder, together with interest thereon at the rate of 17.9% per annum on the unpaid balance from the date of each advance to the date of payment. All principal and interest shall be due on the earlier of (1) the sale of 16239 Villarreal de Avila, Tampa; or (2) December 31, 2006. Payments not made within ten (10) days of due date shall be subject to a late charge of 5% of said payment. All payments shall be first applied to interest, and the balance to principal. This Note may be prepaid, at any time, in whole or in part, without penalty.

This Note shall at the option of the holder hereof be immediately due and payable upon failure to make any payment due hereunder or for breach of any condition of any security interest, mortgage, pledge agreement or guaranty granted as collateral security for this Note or breach of any condition of any security agreement or mortgage, if any, having a priority over any security agreement or mortgage on collateral granted, in whole or in part, as collateral security for this Note or upon the filing by any of the undersigned of an assignment for the benefit of creditors, bankruptcy or for relief under any provisions of the Bankruptcy Code; or by suffering an involuntary petition in bankruptcy or receivership not vacated within thirty days. In the event this Note shall be in default, and placed with an attorney for collection, then the undersigned agrees to pay all reasonable attorney's fees and costs of collection. The parties agree that venue for any action under this Note shall be in the state or federal courts in Hillsborough County, Florida.

All payments hereunder shall be made to Guerrini Corporation, 9545 N. Florida Avenue, Tampa, FL 33612, or such other address as may from time to time be designated by any holder hereof. The undersigned waives demand, presentment and protest and all notices thereof and further agrees to remain bound, notwithstanding any extension, modification, waiver, or other indulgence by any holder of this Note, or upon the exchange, substitution, or release of any collateral granted as security for this Note.

Signed and sealed in Tampa, Florida, as of the _____ day of October, 2006.

GUERRINI FAMILY LIMITED PARTNERSHIP

By: GUERRINI CORPORATION, General Partner

By:_____
Mary K. Haire, Vice President

12