IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:                                       Chapter 11(Involuntary)

GUERRINI FAMILY LIMITED PARTNERSHIP      Case No. 8:06-bk-05383-MGW

       Debtor.

                                                              /

**EMERGENCY MOTION TO VACATE ORDER GRANTING COMPEL
MOTION AND ORDER DIRECTING UNITED STATES MARSHAL'S
SERVICE TO FACILITATE ENTRY INTO PREMISES**

KEYAPAHA FAMILY TRUST, the Limited Partner, KEYAPAHA COMPANY, the Petitioning Creditor, DAVID E. HAMMER ("Hammer"), their undersigned counsel, TERRI L. STEFFEN ("Steffen"), *pro se*, and PAUL A. BILZERIAN ("Bilzerian"), *pro se*, (collectively "Movants") hereby move this Court to reconsider its decision on the Emergency Motion to Compel Compliance with Bidding Procedures Order ("Motion") (Doc. 148) stated in the Order Granting Compel Motion (Doc. 152) and the Order Directing United States Marshal's Service to Facilitate Entry into Premises (Doc. 153) ("Orders"). In support thereof, Movants state the following:

**I. The "Hearing" Was in Violation of Due Process.**

The Motion was filed in this Court at 2:25 PM on Tuesday, November 28, 2006, seeking to compel "the Keyapaha Family Trust (the "Keyapaha Trust"), Keyapaha Company ("Keyapaha"), the Guerrini Family Corporation (the "Former Limited Partner"), Paul Bilzerian ("Bilzerian"), Terri L. Steffen ("Steffen"), . . . as well as their counsel, David E. Hammer ("Hammer")" to facilitate access to the Debtor's real property for a low-ball bidder who has already submitted a bid and been granted stalking horse status. A notice was filed at 3:12 PM that same day, for a hearing at 4:00 PM, forty-eight minutes later. *Bilzerian and Steffen, the two people most affected by the motion and the hearing, were never even given notice of the hearing and did not attend*. No appearance was made

on behalf of Bilzerian, Steffen[1], or Hammer, individually.[2]

To those who received notice of the hearing, the ones least affected by it, the forty-eight (48) minutes notice of the hearing was clearly inadequate.  As is noted in the motion, and pursuant to the order of this Court (Doc. 120), Hammer, John Anthony ("Anthony"), and Alberto F. Gomez, Jr. ("Gomez") were in the midst of the deposition of Mary Haire, which had been delayed for over five months.  During the forty-eight minutes between the time of the notice and the hearing, there was no time to do anything other than suspend the deposition and travel to the courthouse.  Effectively, there was no notice of the hearing during which any preparation of relevant, admissible evidence, or legal argument could take place.  Moreover, the parties named who were most affected by the motion and the hearing, Steffen and Bilzerian, were not provided with notice at all.  The Orders had no evidentiary support and, in fact, was based on misrepresentations of counsel.

The Motion alleges, contrary to fact, that "absent judicial action, the Bilzerian Parties will only restate their willingness to provide access to the Mansion, but never actually grant access." This allegation was untrue, but it succeeded in causing the Court to issue an order that violated the due process rights of Bilzerian Steffen.

The Motion also states that "[a]ll counsel who might wish to be heard regarding access to the Mansion, including Hammer, Gomez, and Anthony, are . . . reachable."  This deceptive statement evidently led the Court to believe that all interested parties had notice of the hearing but, in fact, individuals who are unrepresented, such as Paul A. Bilzerian and Terri Steffen, received no

---

[1]Steffen is the debtor in a bankruptcy proceeding currently before the Honorable Alexander L. Paskay.

[2]Hammer determined that he would not be able to adequately represent himself as well as his clients in the same hearing.  Therefore, Hammer was unrepresented and did not have adequate time to obtain counsel.

notice.

## II.  The Facts Make it Clear that the Motion was Filed in Bad Faith.

Anthony first notified Hammer of the request for access to the home the morning of Monday, November 27, 2006.  Hammer provided Anthony with Steffen's telephone number and suggested that he contact Steffen directly.  Amanda Matthews, another of Anthony's assistants contacted Steffen the following morning.  ***Steffen in no way refused access to the property.*** To the contrary, Steffen indicated that Thursday was inconvenient because prospective buyers were scheduled to tour the premises and having five or six building inspectors all over the property all day long would inhibit the selling effort.  Steffen suggested three dates the following week, including Monday and Tuesday, that would be suitable to tie up the property all day long.  Amanda Matthews told Steffen that she would call her back, which was not true.  Amanda Matthews never called Steffen back.  Instead, hours later Anthony filed this Emergency Motion.  See Declaration of Terri L. Steffen ("Steffen Declaration"), attached hereto as Exhibit A.  If Anthony's true interest were to schedule an inspection, he or his assistants would have called Steffen back and arranged a time or, at the very least, have indicated that the inspection was an "emergency" that had to take priority over the visits by the prospective buyers.  **There was no need for *any* motion and there was certainly no need for an "emergency" motion that violated the due process rights of several parties.**

## III.  There Was No Emergency Basis for the Motion.

The relief sought by Anthony's Emergency Motion was that the Stalking Horse bidder be permitted to enter the Debtor's real property for the purpose of an inspection.  By definition, the Stalking Horse bidder has already bid.  Specifically, this bidder has signed three contracts to purchase the Property, "as is" and without any contingencies.  The first contract this prospective purchaser signed was a backup contract for $6.4 million, dated April 27, 2006.  The second contract

was for $5.35 million, $1 million less than the prior contract, signed on July 27, 2006.  Finally, the third contract was also for $5.35 million, dated October 5, 2006, and submitted to the Court, which approved it as a stalking horse contract over the objection of the Limited Partner and DAER Holdings, which outbid the Stalking Horse bidder at every turn.  This is ***not*** the case of a prospective bidder who might bid at the auction if he were given a chance to see the property.  Rather, the inspection is by an ***existing*** bidder who has visited the property on numerous occasions and has had numerous representatives, including several appraisers, given tours of the property by Steffen.

In any event, Terri Steffen had agreed prior to the filing of the Motion that the inspectors would have access to the property.  Steffen only sought to schedule the inspection on a day when she did not already have other prospective bidders touring the house.  Rather than attempt to agree upon a time, Anthony deemed the scheduling conflict an "emergency" which was worthy of the Court's immediate attention.  This Court has already instructed the parties on what it considers an emergency.  When Hammer first filed an emergency motion to appoint a trustee to avoid the incredible waste of the Debtor's resources by the 1% general partner, the Court explained that:

> This is not a case of cows that are going to die because if we don't grant a motion for cash collateral, you can't buy the feed.  And this is not a case of resolving an employee payroll issue by Friday or they're all going to quit and the plant's going to shut down.  *Those are emergencies, you know, true emergencies.*  Transcript, October 12, 2006 hearing, pp. 150-51.  (Doc. 27).  (Emphasis added.)

Unfortunately, it appears that the Court has not applied that standard to Anthony's motions, purporting to be filed on behalf of the Debtor.  Since that clarification on October 12, 2006, Anthony has filed eight (8) emergency motions (Doc. 15, 19, 24, 26, 35, 58, 97, 148), not one of which qualifies as an emergency.

**IV.  The Motion was filed for the improper purpose of delaying the deposition of Mary Katherine Haire.**

In the action styled as <u>Keyapaha Family Trust et al v. Guerrini Corporation et al</u>, which was

before the Circuit Court for Hillsborough County, Florida, Case No. 06-CA-001779 ("State Court

Action"), David Hammer ("Hammer") had been seeking the deposition of Mary Katherine Haire

since June 20, 2006.  Haire's then-present counsel, Michael R. Carey, Esq., had successfully

prevented that deposition from occurring for a period of 107 days prior to the filing of the Petition.[3]

  Since the Petition was filed, Haire hired bankruptcy counsel: GrayRobinson P.A.

("GrayRobinson"), purportedly to represent the Debtor, and Morse & Gomez, P.A., to represent her

in her capacity as a creditor.  These two firms, acting in concert, have utilized different means to

achieve exactly the same end: to frustrate the taking of the deposition of Mary Katherine Haire.

Finally, this Court ordered Haire to appear for deposition on November 28, 2006.  The

deposition commenced at 10:00 a.m.  Scott Lilly and John Anthony appeared from GrayRobinson

and Alberto F. Gomez, Jr. appeared from Morse & Gomez, P.A.  Throughout the deposition, Mr.

Lilly continuously interposed lengthy speaking objections, so that by the time the witness could

answer, she could not remember the question.  The disruptive and arrogant and insulting behavior

of the GrayRobinson attorneys was inappropriate and will be the subject of a forthcoming motion

for sanctions as soon as the transcript is prepared.  Evidently not satisfied with the effects of their

---

[3]At the time, Keyapaha was amenable to go without any discovery.  A motion for judgment
on the pleadings had been pending since May 15, 2006.  Carey insisted that discovery go forward.
Because of Carey's insistence, Judge Nielsen stated unequivocally that he would not rule on any
substantive motion until the conclusion of discovery, which Carey successfully put off for 107 days.
Judge Nielsen eventually ordered Carey to produce his personal and business calendar for a four-
month period.  Carey eventually agreed to five deposition dates over a four-month period, during
which we could presumably complete four depositions.  Judge Nielsen ruled that Carey was entitled
to take one deposition, and then Hammer would be entitled to take three depositions.  Carey took
the deposition of Terri L. Steffen for ten hours, and then claimed that he was entitled to more.  Of
the ten hours of questioning, Carey asked about 45 minutes of relevant questions—the remainder
was designed to waste time.  Of course, Carey's claim that he was somehow entitled to continue to
depose Terri Steffen further delayed the deposition of Mary Katherine Haire.  It could not have been
clearer that Carey's sole purpose was to prevent or delay the deposition of Mary Katherine Haire.
This set of impenetrable delays was one of the major reasons for filing the Involuntary Petition.

irresponsible and disruptive conduct, GrayRobinson filed this frivolous Motion at 2:25 PM for the sole purpose of stopping the deposition. The GrayRobinson attorneys knew that they could have easily resolved this matter by simply doing what Amanda Matthews had promised Steffen – call Steffen back and finish scheduling the inspection.

## V.  The Motion Contains Misrepresentations.

The most telling statement in the Motion is: "[Bilzerian and Steffen] initiated this reorganization through a sham entity, Keyapaha, in order to avoid the effects of a state court order requiring them to vacate the Mansion." It is extraordinarily inappropriate for an attorney for a partnership which is owned ninety-nine percent (99%) by Keyapaha to attack Keyapaha as a sham without a shred of evidentiary support.[4]

The Motion falsely states that "Nolan, the Stalking Horse, and inspectors retained by the Stalking Horse have all cleared their calendars to facilitate the Thursday inspections that Matthews has coordinated." First, Matthews did not coordinate the inspection. At least one inspector retained by the Stalking Horse told Hammer that she came "on no notice," and could not stay all day, because "she could not cancel all her other appointments." She agreed to coordinate her return with Terri Steffen, consistent with this Court's order. Second, neither Nolan or the Stalking Horse attended the inspection on November 30, 2006. See Declaration of David E. Hammer ("Hammer Declaration"), attached hereto as Exhibit B.

The Motion refers to "the willful actions of the Bilzerian Parties to preclude access to the

---

[4]If any entity is a sham, it is the entity holding the other one percent: Guerrini Corporation, which is nothing other than a sham for Mary Haire. Even GrayRobinson cannot determine whether an action has been taken by Mary Haire or by Guerrini Corporation—this inability results from the lack of distinction between Mary Haire and Guerrini Corporation, of which she is the sole shareholder, officer, and director.

Mansion." Neither Paul Bilzerian, Terri Steffen, Lois Steffen, Keyapaha Company, Keyapaha Family Trust, Guerrini Family Corporation, nor any person or entity related thereto, has precluded access to the residence. To the contrary, Terri Steffen conducts tours of the residence on a regular basis. In fact, on November 30, 2006, after the inspectors departed Ms. Steffen returned to the property to conduct a tour for the prospective buyer escorted by Ms. Biernacki.[5] See Steffen Declaration, and the Declaration of Paul A. Bilzerian ("Bilzerian Declaration"), attached hereto as Exhibit C.

The Motion refers to "the successful derailment by Bilzerian of a pre-petition auction that was conducted under the auspices and at the direction of the court presiding over the state action." Nothing could be further from the truth. Bilzerian is the only person that devised a solution to the title issues, which was acceptable to the Receiver, the purchaser, and the limited partner. Bilzerian's solution allowed the highest bidder to acquire the property for the same net amount to the Partnership and terminated all litigation. Haire rejected that solution solely because she could not extract releases from the ninety-nine percent (99%) limited partner, which, of course, had nothing whatsoever to do with the auction or the sale of the property.

**VI. The Motion Was Not Supported by Any Evidence.**

Because of the timing of the motion, with forty-eight (48) minutes notice, it was impossible to prepare or bring any evidence. In fact, no evidence was presented at the hearing. The Order does not contain any finding of fact because no admissible evidence was presented to the Court upon which factual findings could be made. When the hearing notice was delivered to Hammer, Hammer

---

[5]Contrary to this Court's instructions, not a shred of evidence was provided to Hammer to indicate that Larry Mobley, the alleged bidder accompanied by Ms. Biernacki, is even qualified to bid on the property. See Hammer Declaration. Hammer has submitted a letter to Mr. Anthony demanding that he share this information with Hammer. If Mr. Anthony continues to refuse to comply with this Court's order, Hammer will file the appropriate motion.

immediately expressed his lack of knowledge of the facts relevant thereto: Hammer was unaware of any refusal by Terri Steffen to permit entry into the residence.  Hammer learned later that *there was no such refusal.*  Hammer learned these facts later by interviewing Ms. Steffen.  The Court would have learned these same facts if Steffen and Bilzerian had been given notice and sufficient time to attend the hearing.  See Hammer Declaration and Steffen Declaration.

This Court's order provides that GrayRobinson is authorized to spend $2,500 which it will charge to a Partnership, 99% of which will be borne by one of the parties against which the relief has been sought.  That authorization was made without hearing one word or reading one piece of admissible evidence.  The Motion sets forth a plethora of so-called "facts," which have no relationship to the truth.

What happened on November 30, 2006 is shocking.  Hammer arrived at the property prior to 9:00 AM to ensure that the inspectors were provided with access to the property.  Hammer was shocked to see six United States Marshals enter the property and demand to see all occupants in the home.  Hammer asked Bilzerian to appear before the six United States Marshals.  When Mr. Bilzerian asked the Marshals for their authority to enter the property without permission, they informed him that it was pursuant to this Court's order, an order that Mr. Bilzerian had never seen until that moment.  Mr. Bilzerian pointed out that this Court's order clearly stated that the Marshals were directed to enter the property only if the Debtor informed them that it had been denied access to the property.  Mr. Bilzerian then asked if the Marshals had been informed by the Debtor that it had been denied access to the property.  The Marshals refused to answer Mr. Bilzerian's question even though he posed it not less than one dozen times.  Mr. Bilzerian then suggested that Judge Williamson be called and that, in the meantime, the inspectors should immediately begin their inspection.  The Marshals informed the inspectors that they could not begin their inspection and

ordered them to remain in the foyer, where they remained for approximately one hour. See Hammer Declaration, Bilzerian Declaration.

While Hammer attempted to reach Judge Williamson, the six Marshals, the inspectors, Amanda Matthews, and Hammer all remained in the foyer. Mr. Bilzerian returned to his work after suggesting, once again, that the inspectors be allowed to begin their inspection. Mr. Bilzerian returned to the foyer several times, and, in each instance, repeated his question. He explained to the Marshals that, if the Debtor had informed them that it was denied access, then they had every right to be on the premises and do their job but that, if the Debtor had not so informed them, they had no right to be there and must leave. The Marshals continued to refuse to answer Mr. Bilzerian's question until they finally left after a considerable time. Mr. Bilzerian asked the Marshals why they were leaving and they refused to anser that question as well. Once the Marshals left, the inspectors were given complete and total access to the property. See Hammer Declaration, Bilzerian Declaration.

It was nothing less than shocking to watch six United States Marshals invade the property. None of the occupants of the property nor Hammer have been given any explanation for this shocking disregard for their constitutional rights. Either representatives of the Debtor lied to the Marshals and caused them to enter the premises, or the Marshals took it upon themselves to unlawfully enter the premises, unlawfully impede the inspection, and frustrate this Court's order.

**VII. The Motion Was Filed in Complete Disregard to Local Rule 3.01(g).**

This Court reviewed a motion filed and served at 2:25 PM, and then, at 3:12 PM, set a hearing for 4:00 PM. Notice of the hearing was not given to the parties most affected so the Court did not hear from the parties or the witnesses who had knowledge of the facts. The Court did not hear one fact, or see one piece of evidence.

Local Rule 3.01(g) states unequivocally that "the moving party shall confer with counsel for the opposing party *in a good faith effort to resolve the issues raised by the motion*" (emphasis added).  There was not even the slightest effort to comply with Local Rule 3.01(g) in this case.

WHEREFORE, Movants respectfully request that this Court vacate the Order Granting the Motion to Compel and the Order Directing United States Marshal's Service to Facilitate Entry into Premises.

Respectfully submitted,

*David Hammer*

David E. Hammer, Esq.
Florida Bar No. 23173
DAVID E. HAMMER, P.A.
218 E. Bearss Ave., #360
Tampa, FL 33613-1625
tel (813) 274-4999
fax (800) 967-7340
mail@davidhammeresq.com
In his capacity individually, and as attorney for
Keyapaha Company and Keyapaha Family Trust

Terri L. Steffen
*pro se*
16229 Villarreal de Avila
Tampa, FL 33613-1083


Paul A. Bilzerian
*pro se*
16229 Villarreal de Avila
Tampa, FL 33613-1083

## CERTIFICATE OF SERVICE

I hereby certify that on December 1, 2006, I electronically filed a true and correct copy of the foregoing Emergency Motion to Vacate the Order Granting Compel Motion and the Order Directing United States Marshal's Service to Facilitate Entry Into Premises with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to John A. Anthony and Stephenie M. Biernacki, GrayRobinson P.A., 201 N. Franklin Street, Suite 2200, Tampa, FL 33602; Roberta Colton, Trenam Kemker, Bank of America Plaza, 101 E. Kennedy Boulevard, Suite 2700, Tampa, FL 33602; W. Keith Fendrick, Esq., Foley & Lardner LLP, 100 North Tampa Street, Suite 2700, Tampa, FL 33602; Alberto F. Gomez, Esq., Morse & Gomez, 119 South Dakota Avenue, Tampa, FL 33606; Caryl E. Delano, Esq., Addison & Delano, Post Office Box 2175, Tampa, FL 33601; Joseph J. Nolan, 1674 Williamsburg Square, Lakeland, FL 33803; and the Office of the United States Trustee, Timberlake Annex, Suite 1200, 501 E. Polk Street, Tampa, Florida 33602.

David Hammer

David E. Hammer