IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:                                                          Chapter 11(Involuntary)

GUERRINI FAMILY LIMITED PARTNERSHIP          Case No. 8:06-bk-05383-MGW

        Debtor.

_____/

## OBJECTION TO DEBTOR DISCLOSURE STATEMENT

KEYAPAHA FAMILY TRUST, Limited Partner, by and through its undersigned counsel, hereby objects to the disclosure statement ("Disclosure Statement") filed by GrayRobinson, P.A. ("GrayRobinson") and signed by Mary Katherine Haire ("Haire"), purportedly on behalf of the Debtor in support of the liquidating Chapter 11 Plan ("Liquidating Plan") filed by GrayRobinson. In support of that objection, the Limited Partner states the following:

GrayRobinson, purportedly on behalf of the Debtor, filed the Disclosure Statement in support of the Liquidating Plan. The Liquidating Plan proposes to sell the Debtor's principal asset, a distinctive piece of residential real property ("Real Property") by courthouse auction ("Auction"). In the Liquidating Plan itself, there is little or no discussion of the Auction: the word auction appears only five times in the document, three of which are in the definitions section, and one of which refers to the auction of personal property, the value of which is insignificant compared to the value of the Real Property. The Disclosure Statement does little, if anything, to ameliorate the deficiency in the Liquidating Plan. While the Disclosure Statement contains thirty-two (32) instances of the word "auction," only three of those refer to the Auction which is being conducted by this Court; the remaining twenty-nine (29) instances relate to an irrelevant discussion of the failed April 27, 2006 auction. Moreover, the Chapter 7 liquidation analysis in the Disclosure Statement is fatally flawed.

Legal Standard

Section 1125(b) of the Bankruptcy Code requires that a disclosure statement contain "adequate information."   Adequate information is defined in 11 U.S.C. § 1125(a)(1) of the Bankruptcy Code as:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information.

The Bankruptcy Code further defines "an investor typical of the holders of claims or interests of the relevant class," under § 1125(a)(2), as follows:

> (2) "investor typical of holders of claims or interests of the relevant class" means investor having--
>
> > (A) a claim or interest of the relevant class;
> >
> > (B) such a relationship with the debtor as the holders of other claims or interests of such class generally have; and
> >
> > (C) such ability to obtain such information from sources other than the disclosure required by this section as holders of claims or interests in such class generally have.

Whether a disclosure statement contains "adequate information" is determined by evaluating the necessity of the disclosure from the perspective of the person affected by it.

**I.  The Limited Partner Needs to Know More Facts about the Auction in Order to Determine Whether it Should Accept or Reject the Liquidating Plan.**

The Limited Partner is the party who is most affected by the outcome of the Auction. According to the Liquidating Plan, the Limited Partner will receive ninety-nine percent (99%) of

the residue after all creditors are paid. The amount of that residue is directly related to the amount which results from the Auction, which is directly related to the conduct of the Auction. The 23-page Disclosure Statement does not contain a single sentence describing the conduct of the Auction, or its results to date.[1]

On information and belief, GrayRobinson has engaged the services of a marketing and advertising firm which is directly affiliated with the real estate agent of the low bidder. The Disclosure Statement fails to discuss that choice, why that choice was made, and the risks associated therewith. The Disclosure Statement fails to discuss that GrayRobinson has engaged the services of the United States Marshal Service to escort prospective bidders through the Real Property, and the negative consequences thereof.

Most importantly, the Disclosure Statement does not discuss the feasibility of the Liquidating Plan: there is no indication that a single bidder will provide the requisite "objective proof of capacity to close," or even that a single bidder can or would close, if that bidder wins the Auction. So, although the Stalking Horse contract would yield $5.1 Million to the Partnership to distribute among the holders of claims, there is no assurance that the Stalking Horse bidder, or any other bidder, will maintain their bid until December 11, 2006, or subsequently close on any bid.

The Disclosure Statement is utterly bereft of any disclosures regarding the Auction which is the sole source of funding for the Liquidating Plan; rather, it uses its twenty-three (23) pages on definitions, and a skewed version of the history of the litigation between the partners. Therefore, the Disclosure Statement does not present "adequate information," as that term is defined in section

---

[1]The Auction was ordered on November 9, 2006, to be complete by December 11, 2006. The Disclosure Statement was filed on November 22, 2006. At that time, over forty percent (40%) of the marketing period had expired. There is no discussion of the marketing techniques employed, or the success or failure of those techniques. It does not appear that a single qualified bidder has even viewed the real property.

1125(a)(1).

## II.   The Disclosure Statement Misstates That There Are No Classes Impaired by the Liquidating Plan.

According to the Disclosure Statement, no class is impaired by the Liquidating Plan.  The

definition of impairment is found in Section 1124 of the Bankruptcy Code.  According to that

section,

> Except as provided in section 1123(a)(4) of this title, a class of claims or interests is impaired under a plan unless, with respect to each claim or interest of such class, the plan--
>
> (1) leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest; or
>
> (2) notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default--
>
> (A) cures any such default that occurred before or after the commencement of the case under this title, other than a default of a kind specified in section 365(b)(2) of this title or of a kind that section 365(b)(2) expressly does not require to be cured;
>
> (B) reinstates the maturity of such claim or interest as such maturity existed before such default;
>
> (C) compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law;
>
> (D) if such claim or such interest arises from any failure to perform a nonmonetary obligation, other than a default arising from failure to operate a nonresidential real property lease subject to section 365(b)(1)(A), compensates the holder of such claim or such interest (other than the debtor or an insider) for any actual pecuniary loss incurred by such holder as a result of such failure; and
>
> (E) does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest.

The claim of the Limited Partner is not in the nature of an executory contract under Bankruptcy

Code § 365, and the Limited Partner has not agreed to unfavorable treatment under Bankruptcy

Code § 1123(a)(4).  Therefore, the only way for the Limited Partner to be unimpaired under a plan

is if that plan "leaves unaltered the legal, equitable, and contractual rights to which such claim or

interest entitles the holder of such claim or interest." Clearly, the Liquidating Plan fails this test with respect to the Limited Partner.

The Limited Partner is entitled to ninety-nine percent (99%) of the residue after the Debtor's property is sold at its fair market value. The Debtor is extremely unlikely to realize full fair market value from the sale of the Debtor's property at a courthouse Auction. Subjecting the Limited Partner to limit the value of its interest to the residue from a courthouse Auction after a thirty (30) day marketing period clearly alters the legal, equitable, and contractual rights of the Limited Partner. Therefore, the Limited Partner is in fact impaired by the Liquidating Plan, and will therefore have the right to vote on it pursuant to Bankruptcy Code § 1126.

**III. The Disclosure Statement Drastically Misstates That Which Would Occur in a Chapter 7 Liquidation.**

The Disclosure Statement states that

The Debtor believes that at this time liquidation under Chapter 7 would result in diminution of the value of its estate because of additional administrative expenses involved in the appointment of a trustee and attorneys, accountants, and other professionals to assist a trustee. A trustee and its professionals would require the expenditure of additional time and expense to become familiar with the Debtor's operations and the contentious litigation that is pending, resulting in delay amid diminution of the Debtor's estate.

However, the appointment of a Chapter 7 Trustee would eliminate the costly pending litigation. In fact, when Keyapaha Company filed the Involuntary Petition, it immediately sought the appointment of a Chapter 11 Trustee, for that very purpose. Instead, Mary Haire hired GrayRobinson as "Debtor's counsel," which has billed in excess of one hundred fifty thousand dollars ($150,000.00) in less than two months. The statement that a Chapter 7 Trustee would be so expensive that "In a liquidation, Holders of Interests would receive nothing and, it is highly likely that all other creditors would receive less than the proposed amounts under the Plan, as payment of their claims" is totally unsupported and simply not credible. Nothing could be more expensive and time-consuming than

the current amalgam of litigation which GrayRobinson has launched against the Limited Partner, the 99% owner of the Debtor.  In fact, the Partnership would fare better in a Chapter 7 liquidation than under the Liquidating Plan, because an independent third-party trustee would take control over the affairs of the Partnership, and conduct those affairs to minimize cost and maximize the value of the bankruptcy estate.  The present 1% General partner, controlled by a vindictive creditor, has done exactly the opposite – it has sought to maximize costs and minimize the value of the bankruptcy estate.

WHEREFORE, the Limited Partner respectfully requests that this Court sustain this Objection to the Disclosure Statement, disapprove of the Disclosure Statement, and grant whatever other relief it deems necessary.

Respectfully submitted,

David Hammer

David E. Hammer, Esq.
Florida Bar No. 23173
DAVID E. HAMMER, P.A.
218 E. Bearss Ave., #360
Tampa, FL 33613-1625
tel (813) 274-4999
fax (800) 967-7340
mail@davidhammeresq.com
Attorney for Keyapaha Family Trust

## CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2006, I electronically filed a true and correct copy of the foregoing OBJECTION TO DEBTOR DISCLOSURE STATEMENT with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to John A. Anthony and Stephenie M. Biernacki, GrayRobinson P.A., 201 N. Franklin Street, Suite 2200, Tampa, FL 33602; Roberta Colton, Trenam Kemker, Bank of America Plaza, 101 E. Kennedy Boulevard, Suite 2700, Tampa, FL 33602; W. Keith Fendrick, Esq., Foley & Lardner LLP, 100 North Tampa Street, Suite 2700, Tampa, FL 33602; Alberto F. Gomez, Esq., Morse & Gomez, 119 South Dakota Avenue, Tampa, FL 33606; Caryl E. Delano, Esq., Addison & Delano, Post Office Box 2175, Tampa, FL 33601; Joseph J. Nolan, 1674 Williamsburg Square, Lakeland, FL 33803; and the Office of the United States Trustee, Timberlake Annex, Suite 1200, 501 E. Polk Street, Tampa, Florida 33602.

David E. Hammer